CHARLES E. MARVIL ET AL. *v.* GEORGE ADINA ELLIOTT.
[No. 6, April Term, 1933.]

660

*Decided April 21st, 1933.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter V. Harrison,* with whom were *Robert France* and *John Grason Turnbull* on the brief, for the appellants.

*Miles, Bailey & Williams,* submitting on brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The appellee, a carpenter, was injured by the falling of a ladder on which he had been standing while removing shingles from the eaves of a building. The principal question in the case is whether the evidence admits of an inference of fact which would entitle him to an award, under the Workmen's Compensation Act (Code, art. 101, sec. 1, *et seq.,* as

amended), as an employee of the individual appellant, Charles E. Marvil, who, with his insurer, is appealing from a judgment of the Circuit Court for Wicomico County, which reversed a decision by the State Industrial Accident Commission disallowing the injured workman's claim for compensation. After a hearing before the commission upon issues as to whether the claimant was employed by Mr. Marvil, and, if so, whether he was only a casual employee, it was determined by the commission that he was not working under employment by Mr. Marvil at the time of the accident. Both inquiries were combined in an issue submitted by the court to the jury at the trial of the claimant's appeal from the commission's order, and the jury found in his favor on that issue.

On the day of the accident, the appellee had been working for Isaac T. Wimbrow in the removal of the roof from a "shed kitchen", formerly attached to a dwelling house which was then in course of transfer to a new location. Mr. Marvil, who is a contractor for such projects, had been engaged by Mr. Wimbrow to move the dwelling. It was agreed that the house, which was a wooden structure, should be sawed into two sections, and these were to be separately removed and then reunited, but in different relative positions. The replacement plans required that the projecting eaves and boxing on one side of the section first moved to the new site should be sawed off in order that the two portions of the house might be brought into proper contact. When the second section of the building was being drawn by windlass and cable towards its destination, Mr. Marvil asked Mr. Wimbrow to have his carpenters remove the eaves and boxing from the side of the first section in order that the work under the contract for the relocation of the building might be completed without delay. Mr. Wimbrow, according to his and the appellee's testimony, refused to assume that duty, asserting that the removal of the eaves was covered by Mr. Marvil's contract. An offer was then made by the appellee to do the work for Mr. Marvil, and that proposal was accepted.

It was testified by the appellee: "I was in the employ of Mr. Wimbrow that day until Mr. Marvil asked me to do this job. Mr. Marvil asked Mr. Wimbrow if I-could do it. I heard him. I asked Mr. Wimbrow what Mr. Marvil wanted. Mr. Wimbrow told me not to do it, and I says, it will not take me long and I will do it, and he says * * * it is up to you if you do. I went over there and did it without making any arrangements as to pay. Nothing was said about pay. Mr. Marvil told me he wanted it cut off. He asked Mr. Wimbrow if I could do it. I says, what do you want done, and he says, I want that boxing cut off, and I says, how long before you will be ready and he says, twenty minutes." While the appellee was doing that work on the portion of the building already moved, the ladder which supported him was accidentally struck and overturned in the operation of the windlass used in moving the second portion into closer proximity to the position it was intended to occupy. A leg fracture and other injuries resulted to the appellee from the fall. After he had been taken to the hospital, Mr. Marvil and his men completed the work of removing the eaves.

The testimony of Mr. Wimbrow and Mr. Marvil was in conflict as to the authorization of the appellee to do the work in the course of which his injuries were inflicted. Mr. Wimbrow testified that he refused to give such a direction, for the reason, distinctly stated at the time, that it was work which Mr. Marvil had contracted to perform. On the other hand, Mr. Marvil testified that he did not regard the removal of the eaves as a part of his contractual duty, and that Mr. Wimbrow sent the appellee to the building for that purpose. But this conflict leaves unaffected the question as to the legal sufficiency of the evidence produced by the claimant to prove that, when injured, he was working for Mr. Marvil at his request and in accordance with his specific instructions. While nothing was said about the appellee's compensation, there is no suggestion in the evidence that he expected or was intended to do the work gratuitously. His current rate of pay was fifty cents per hour. There is no

ground for an inference that he was understood to be sacrificing his earning opportunity during the period of his work on the eaves of the relocated building. If, as his testimony tends to prove, he did the work for Mr. Marvil at his request, there could be no valid reason to deny the appellee's right to be paid the reasonable value of such a service. To classify him as an employee, it is not essential that the rate of his compensation should have been stipulated in advance. In our opinion, it could be rationally inferred from the evidence that the employment of the appellee by Mr. Wimbrow was temporarily suspended, and that he was the employee of Mr. Marvil in doing the work which exposed him to the risk of the injuries he sustained.

If, however, the evidence has no legal tendency to prove that the appellee was other than a casual employee of the contractor in whose service he was injured, then he is not within the purview of the Workmen's Compensation Act, from the provisions of which "casual employees" are specifically excepted.

In *State Accident Fund v. Jacobs*, 134 Md. 133, 106 A. 255, where a teamster was injured while acting under employment to do hauling for a tomato packing plant when he was needed for that service during the canning season, this court said (pages 134, 135 of 134 Md., 106 A. 255): "The Workmen's Compensation Act of this state does not define the term 'casual,' as therein used to describe one of the classes of employees to whom the act is not intended to apply. It is a purely relative term, and, in the absence of a statutory definition, its application should be determined in each case according to the particular facts presented. * * * The question whether an employment is casual must be determined with principal reference to the scope and purpose of the hiring, rather than with sole regard to the duration and regularity of the service."

In *Hygeia Ice & Coal Co. v. Schaeffer*, 152 Md. 231, 136 A. 548, a workman employed to cover the end of a building with shingles, at a specified rate of compensation per square, was held not to be judicially classifiable as a

casual employeee. It was said by the court (page 238 of 152 Md., 136 A. 551) : "Any definition must be a limitation, and therefore courts generally, either by reason of legislative mandate, or their view of the wisdom of the policy of such legislation, have refrained from giving a definition of the term 'casual employee,' which must govern in all cases, but have preferred to leave the decision of any case to be governed by its peculiar facts and circumstances." After a further discussion and the citation of cases, the opinion concluded (page 240 of 152 Md., 136 A. 552) : "Applying these general principles to the case before us, it is evident that the repair of the ice and coal company's building was as essential to the successful conduct of its business as keeping its machinery in repair, or the manufacture and delivery of its products; that the appellee was employed for the purpose of making these necessary repairs, the compensation being fixed by $2.25 per square rather than by daily wage; that the duration of the employment was indefinite, possibly terminating in a few days, and likely to continue for several weeks. Under all the circumstances as disclosed by the record, we are unwilling to hold, as a matter of law, that the scope, purpose and nature of the employment was casual. * * *"

One of the cases cited in *State Accident Fund v. Jacobs, supra,* was *In re Gaynor,* 217 Mass. 86, 104 N. E. 339, 340. In that case a waiter engaged by a caterer to serve at a banquet was held to be casually employed, under the terms of the Workmen's Compensation Act of Massachusetts. The Supreme Judicial Court said: "The engagement was for a single day and for one occasion only. It involved no obligation on the part of the employer or employee beyond the single incident of the work for four or five hours at the college. That would have had its beginning and ending, including the outward and returning journeys (but for the unfortunate accident), within a period of less than twenty-four hours. The relation between the waiter and the caterer had no connection of any sort with any events in the past. Each was entirely free to make other arrangements for the

future, untrammeled by any express or implied expectations of further employment."

In the case of *Porter v. Mapleton Electric Light Co.,* 191 *Iowa,* 1031, 183 N. W. 803, 805, where a lineman employed by a telephone company was transferred for a few hours to an electric light company to assist in resetting some of its poles, and was injured during his employment in that work, it was held that he was only a casual employee of the electric light company, the court saying: "The scope and purpose of the hiring are important considerations. Clearly under the facts plaintiff's employment was purely casual. * * * He had regular employment with another company, and it loaned him for a special and particular service of about three hours' duration, and when that service ended he intended to return and work for his regular employer."

In the present case the appellee was allowed by a property owner for whom he was working to be engaged temporarily by a contractor in charge of other work on the same premises. Upon the completion of the task to which the appellee was thus assigned, and which would probably have required not more than two or three hours for its performance, he was to resume his work for the first employer. The brief service he was undertaking to render for the contractor had no relation to any engagement between them in the past or future. It was limited to a particular occasion beginning and ending within a short portion of a single day. In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute. This conclusion is required, in our judgment, by a proper interpretation of the law and by the most favorable consideration of the claimant's proof and of any inferences of which it admits.

In consequence of the view just stated, we must hold that the prayer of the defendant employer for an instruction to the jury that according to the uncontradicted evidence the claimant was a casual employee of the defendant at the time of the accident should have been granted. As the order of the State Industrial Accident Commission was adverse

to the claimant, there could be no presumption, in his favor, under the statute, to affect the granting of such an instruction.

In 33 *A. L. R.* 1452, there is an extensive note on the subject of casual employment, and it includes citations of many cases with which in principle this decision is in accord.

A discussion of other exceptions in the record is needless, in view of our conclusion upon the main question presented.

> *Judgment reversed, with costs, and case remanded for a judgment in conformity with this opinion.*