CLAYBURN *v.* SOUEID, INC., ET AL.

[No. 370, September Term, 1964.]

*Decided June 25, 1965.*

The cause was argued before Horney, Marbury, Sybert, Oppenheimer and Barnes, JJ.

*Karl G. Feissner,* with whom were *Alpern & Feissner* on the brief, for appellant.

*Jo V. Morgan, Jr.,* with whom was *Harry L. Ryan, Jr.,* on the brief, for appellees.

Oppenheimer, J., delivered the opinion of the Court.

This Workmen's Compensation appeal involves the question of whether or not the injured claimant was a casual employee. The Commission held he was not; on appeal, Judge Shure, sitting without a jury, determined he was. While the hearing before Judge Shure was de novo, the testimony before him, for the most part, was the same as that before the Commission. The facts, with exceptions which will be referred to, are undisputed.

There is a threshhold jurisdictional question. The appeal from the order of the Workmen's Compensation Commission was filed on November 18, 1963, thirty-one calendar days from October 18, 1963, the date of the order. Maryland Rule B4 requires that, in a matter such as this, an order for appeal shall be filed within thirty days from the date of the action appealed from. However, Rule 8 excludes the day of the Commission's order, and a Sunday, if that day is the last day of the period. November 17 was a Sunday. The thiry day limitation, therefore, did not expire until November 18, and the order of appeal, having been filed on that date, was timely. The injured claimant, the appellant here, was not named as a party in the original appeal, but on December 17, the court granted the employer's motion to include the claimant as a party with the Commission. Rule B2 c requires that a copy of the order for appeal shall be served on the agency, but does not require that all parties to the proceeding before the agency shall be joined. Rule B2 d requires that, promptly after receipt of the copy, the agency shall give notice of the filing of the appeal to every party to the proceeding before it or his representative. There is no contention that this procedure was not followed, or that the appellant was prejudiced by not being named as a party in the original appeal; indeed, in the argument before us, the appellant's counsel asked leave to waive his jurisdictional contentions. In any event, the contentions are without merit.

After a hearing, the Commission found that Otis Clayburn, the claimant and appellant here, sustained an accidental injury arising out of and in the course of his employment on April 8, 1963, and that at the time of the injury he was not a casual employee within the meaning of the law. It found that Clayburn was temporarily totally disabled to May 22 and sustained a permanent partial disability of 10% industrial loss of use of his body as a result of the injury to his back. It found, further, that Clayburn's average weekly wage was $35. Soueid, Inc. and Fathi Soueid, employer and non-insurer, (the appellees) were ordered to pay compensation accordingly, and to pay the bills incurred by Clayburn for medical services and appliances. Soueid and his company appealed to the Circuit Court for Montgomery County, claiming that the Commission erred in finding

Clayburn was not a casual employee and in finding that his applicable average weekly wage was $35. After the hearing before him, Judge Shure held that, under the law and the evidence, the Commission erred in interpreting the facts and that Clayburn's employment was casual in nature. He remanded the case to the Commission for the finding that Clayburn was not entitled to recover.

Fathi Soueid is a builder of houses, averaging, according to him, between six and eight a year. He sublets his work, except for the cleaning of the houses, laying drain tile, leveling the ground, moving material and the like. He employs laborers for this work, to whom he personally gives instructions. During the first three months of 1963, Soueid had nine laborers intermittently engaged in this class of work. He pays his laborers in cash, and keeps no books or records of any kind as to the payments, except that he pays the Social Security tax for them.

Clayburn testified that Soueid had picked him up a week before Christmas in 1962 in a labor pool on Eastern Avenue in the District of Columbia, to work for him a few days in Maryland. After a few days, Soueid asked Clayburn if he wanted a steady job. Clayburn testified that "I said 'yes.' He said, 'You are a good man.' He said, 'I'll give you a steady job.' I said, 'That is what I'm looking for.'" Soueid raised Clayburn's hourly pay from $1.50 to $1.75 and thereafter called for Clayburn, by previous arrangement, at Chevy Chase Circle, which is some distance from the labor pool on Eastern Avenue. Clayburn testified that he worked steadily for Soueid, when the weather was favorable, from the time of his first employment in December, 1962, until he was injured on April 8, 1963, with the exception of one day in April. He had worked for Soueid on April 1, 2 and 3. Clayburn testified that Soueid then told him he had to go out of town and asked him if he wished to work one day for a friend of Soueid, which Clayburn did. With this exception, Clayburn had worked for no one other than Soueid during the entire period. April 8 was on a Monday. On the morning of that day, Soueid picked up Clayburn at Friendship Heights, told him they were going to a new job and let him out at the house at which Clayburn was to work.

Soueid instructed Clayburn to clean the trash out of the basement and grade it down. Clayburn was going into the basement on a ladder; the ladder skidded to one side and Clayburn fell, injuring his leg and back.

Clayburn testified further that Soueid paid him weekly, on Fridays, and that his pay was $65 or $70 a week. Soueid denied that he paid Clayburn weekly, and testified he paid him at the end of each day. On the basis of his Social Security records, Soueid testified that for the first three months of 1963 he paid Clayburn a total of $56, which at $1.75 an hour, would be for 32 hours. Soueid did not remember how many days Clayburn had worked for him in December, 1962, it "could be 1, 2, 3, maybe 4 days." He said Clayburn had worked for him three days in April, before the day of the accident, for which he was paid $37.50, representing about 21 hours work.

Other than on the matters of the amount of time worked, whether payment was made daily or weekly, and whether Clayburn worked for some one other than Soueid for one or two days immediately preceding the day of the accident, Clayburn's testimony was not contradicted either before the Commission or the judge.

Soueid's testimony, both before the Commission and in court, was vague. He did not recall engaging Clayburn's services, although he remembered including him in his Social Security reports. He stated that when he needed laborers to clean one house or move materials from one location to another, he went to the labor pool on Eastern Avenue, in Silver Spring. He does not take out any withholding tax when he pays these men. He used to send W2 forms to the men at the end of the year, but does not do so any more. He saw Clayburn working for Bogdan, another builder, on the 4th or 5th of April. In December, 1962, Soueid had approximately four houses under construction; in April, 1963, at the time Clayburn was injured, he had three houses in the subdivision where Clayburn was working. Soueid admitted that the second or third time Clayburn worked for him, he raised his hourly pay from $1.50 to $1.75.

The only witness who testified for the first time in court, on the appeal, was Julius Bogdan, a builder, who testified he hired Clayburn for two days, April 4 and 5. This was the first and

only time he employed Clayburn. Clayburn denied working for Bogdan and that he had ever seen him before Bogdan's court appearance.

This Court has had a number of cases before it involving the question of whether or not the particular employment involved was casual. We have pointed out that the Workmen's Compensation Act does not define the term "casual" as therein used to describe one of the classes of employees to whom the Act is not intended to apply [Code, 1957, Art. 101, § 67 (3)], and that, in the absence of a statutory definition, the application of the term should be made in each case according to the particular facts presented. *Hygeia Ice & Coal Co. v. Schaeffer,* 152 Md. 231, 238, 136 Atl. 548 (1927); *State Accident Fund v. Jacobs,* 134 Md. 133, 134, 106 Atl. 255 (1919). "Casual," as used in the Act, "is a word of indefinitely varied import." *Moore v. Clarke,* 171 Md. 39, 52-53, 187 Atl. 887 (1936).

Nevertheless, criteria have been developed, in our Court and in other jurisdictions which have similar statutes, to which we have given weight in determining whether an employment is casual or regular. These criteria include the nature of the work, the duration of the employment, and whether it is occasional, incidental, or a usual concomitant of the employer's business. *Moore v. Clarke, supra,* at 53 and authorities therein cited.

Where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue as to the relation that existed between the parties is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, *Hygeia Ice & Coal Co. v. Schaeffer, supra,* but where the essential terms and manner of employment are undisputed, the question is one of law for the Court. *Charles Freeland v. Couplin,* 211 Md. 160, 168, 126 A. 2d 606 (1956); *Sun Cab Co. v. Powell,* 196 Md. 572, 582, 77 A. 2d 783 (1951); *Williams Construction Co. v. Bohlen,* 189 Md. 576, 579, 56 A. 2d 694 (1948). Accordingly, where the determinative facts were not in dispute, we have held, as a matter of law, on the facts in the particular case, that the employment was casual. *East v. Skelly,* 207 Md. 537, 114 A. 2d 822 (1955); *Moore v. Clarke, supra; Marvil v. Elliott,* 164 Md. 659, 165 Atl. 822 (1933). We have also held, as a matter of law, on undisputed facts, that

the employment was not casual. *State Accident Fund v. Jacobs, supra.*

In *Jacobs,* the injured man, who was a farmer and a teamster, had been employed to do hauling for a factory whenever he was needed for that service, during a cannery season. Under this general engagement, the employee had been called upon repeatedly for hauling service in the course of the packing season, and was paid at uniform rates. We said:

"The question whether an employment is casual must be determined with principal reference to the scope and purpose of the hiring rather than with sole regard to the duration and regularity of the service. One who enters into a contract of employment for an entire season is not a casual employe merely because he may be required to work for only short and irregular periods. When there is a continuing engagement to serve the employer in his business at such times as the particular and essential service may be needed, the employment is not 'casual' according to any of the judicial definitions of that term. In this case the service required and rendered was occasional, but it was in pursuance of an engagement covering the whole of the working season at the employer's plant.

\* \* \*

The work in which the appellee's son was engaged when he received the injury which caused his death was a necessary part of his employer's business. It was a service rendered under an employment which was not limited to the hauling then in progress, but applied to every recurring occasion for such assistance during the whole of one of the annual productive periods of the employer's enterprise. Upon the facts of the case we agree with the ruling of the Court below, that the employment was not casual within the meaning of the statute, and that the appellee is entitled to compensation under its terms." 134 Md. at 135-36.

*East, Moore* and *Marvil* presented converse factual situations. In *Moore,* a professional jockey was accidentally killed while

riding the appellee's horse in a race. He was engaged to perform a single service, for that race only. In holding that on the undisputed facts the jockey was a casual employee, we said:

"In this case the employment extended over a period of but a few minutes at most, and while it was a part of a business in which the employer was regularly engaged, it was single, isolated, complete in itself, was connected with no past or future employment, and when it was finished all contractual relations between the employer and the employee ceased. It was incidental and fortuitous in the sense that, while the employer must have employed some one to ride her horse, she was under no obligation to employ Hanford, and that while his business was riding horses in races, he was, until she employed him for that service, under no obligation to ride her horse in that race, or indeed to ride in it at all." 171 Md. at 54.

In *East,* on substantially the same facts as *Moore,* we came to the same conclusion. In *Marvil,* we summarized the facts and our reasons for holding the employment was casual, as follows:

"In the present case the appellee was allowed by a property owner for whom he was working to be engaged temporarily by a contractor in charge of other work on the same premises. Upon the completion of the task to which the appellee was thus assigned, and which would probably have required not more than two or three hours for its performance, he was to resume his work for the first employer. The brief service he was undertaking to render for the contractor had no relation to any engagement between them in the past or future. It was limited to a particular occasion beginning and ending within a short portion of a single day. In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute." 164 Md. at 665.

In each of these cases, we referred to numerous holdings in

other jurisdictions. The question of whether or not an employment was casual has been presented in a great number of varying factual situations. See *Larsen, Workmen's Compensation Law*, § 51.12 (1961) and annotations, *Workmen's Compensation: what is casual employment*, 33 A.L.R. 1452, 60 A.L.R. 1195 and 107 A.L.R. 934. In this case, under the applicable criteria, we find it clear, as a matter of law, on the undisputed facts, that Clayburn was a regular and not a casual employee.

The work which Clayburn performed for Soueid was essential to Soueid's business of building houses. Soueid sub-let the work of building the houses, but engaged laborers, of whom Clayburn was one, in the cleaning of the houses after they were built, laying drain, leveling the ground, moving material from one location to another, and general laborer's work. This work was necessary in connection with each of the houses Soueid was building. Clayburn was taken by Soueid from one location to another and always worked under Soueid's personal direction. The work was not seasonal, except in the sense that, being largely performed out of doors, the weather had to be favorable. The work did not have to be performed continuously, but it was necessary at certain stages of each building operation, and Soueid built houses steadily. Clayburn testified, without contradiction, that after Soueid first engaged him from the labor pool, Soueid told him he would give him a steady job, and Clayburn said that this was what he was looking for. After a few days, Soueid raised Clayburn's pay, and called for him, not at the place where the other men, in a labor pool, awaited day's employment, but at another location previously agreed upon between the two men. During the entire period, Clayburn worked for no one except Soueid, except for a day or two between April 3 and 8, when Soueid had said he would be out of town. The evidence is clear that Clayburn's employment by Soueid was steady and pursuant to a continuing and individually arranged agreement.

While Clayburn testified that he worked for Soueid for many more days than Soueid's scanty records showed, Soueid admitted that Clayburn worked for him 1, 2, 3 or 4 days in December, 1962, 32 hours in the first three months of 1962, and three days early in April, 1963, before the day of the accident.

This admitted employment is, of itself, far more than an employment for one job or a single piece of work, particularly in view of the fact that the work, while essential, was necessarily intermittent and that most of the months involved were in the winter season when weather conditions limit construction work. The duration of the employment, to the date of the accident, was about four months. The nature of the employment was not occasional or incidental; the work done was a usual concomitant of the employer's business.

The facts in this case are strikingly similar to those in *Jacobs,* where, as here, the employment was for such times as the worker was needed, and where, as here, the work was a necessary part of the employer's business. In *Jacobs,* we held the employment not to be casual although it was only for a season; here, there was no such limitation as to the duration of the employment. This case is essentially the antithesis of *East, Moore* and *Marvil,* in each of which the employment was limited to a particular occasion, to extend only for a few hours or a few minutes.

Judge Shure, in his opinion, referred to the fact that laborers other than Clayburn had been picked up from the same pool, whenever Soueid needed extra day help. Clayburn's employment began in this way, but, by special arrangement with Soueid, his status changed. The judge also stressed that no amount was ever withheld from Clayburn's salary for income taxes or social security, and that his name does not appear on the employer's books and records. We have held that an employer cannot relieve himself of his liability for workmen's compensation by the way he keeps his books. *Williams Construction Co. v. Bohlen, supra,* at 189 Md. 581, 582. A fortiori, an employer cannot evade his liability by failing to keep records at all.

Whether Clayburn worked for Bogdan, or some other employer and whether the employment was for one or two days between Clayburn's work for Soueid on April 3 and 8, is immaterial to the issue before us. Clayburn's duties required Soueid's personal direction, and Clayburn's testimony is uncontested that Soueid told him he was going out of town and suggested that, during the period, Clayburn work for some one

else. Clayburn may have been a casual employee of Bogdan, but if so, this was only a temporary and permitted interruption to his employment by Soueid. See *Marvil v. Elliott, supra.*

The court below erred in holding Clayburn's employment was casual in nature. The Commission's finding to the contrary was correct and should have been affirmed. There was no appeal from the Commission's further findings that Clayburn was temporarily totally disabled and sustained a permanent partial disability as a result of the accidental injury. Under those findings, the employer was liable for any necessary medical and hospital treatment and for necessary appliances as well as for the payment of benefits. Code (1957), Art. 101, § 37. The employer and his company only appealed from the findings that Clayburn was not a casual employee and that his average applicable weekly wage was $35. Because of Judge Shure's finding on the first issue, he did not reach the second, and the case must be remanded for the determination of that issue.

> *Order reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by appellees.*