## WALTER WINTERS ET AL. *v.* BERTRAND P. PAYNE

[No. 53, September Term, 1971.]

*Decided November 10, 1971.*

328

The cause was argued before MORTON, ORTH and POWERS, JJ.

*William T. Russell, Jr.,* for appellant Walter Winters. *W. Kennedy Boone, III, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for Uninsured Employers' Fund, other appellant.

*A. Harold DuBois,* with whom were *Verderaime & DuBois, A. Freeborn Brown* and *Brown, Brown, Lanahan & Whitfill* and *William B. Evans* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Whether the claimant, Bertrand P. Payne, was a "casual employee" within the meaning of the Workmen's Compensation Act, Md. Code, Art. 101, § 67 (3),[1] and, thus, excluded from its benefits, is the single issue presented in this appeal. The Workmen's Compensation Commission ruled that he was not a casual employee and this determination was affirmed by Judge H. Kenneth Mackey, sitting in the Circuit Court for Cecil County.

At the hearing before the Commission on June 12, 1970, the employer, Walter Winters, who was uninsured, testified that during the years 1967 and 1968 he engaged,

1. By Ch. 119, Acts of 1971, enacted April 23, 1971, the exemption of "casual employees" from the terms of the Workmen's Act is provided for in Section 21 (c) (6).

on a part-time basis, in the home improvement business for which he had obtained an appropriate license. He stated that during this period he was a full-time salaried employee with General Motors and that the salary represented his principal source of income. According to his records, he completed home improvement contracts for two "jobs" in 1967, from which he grossed approximately $1,950 and netted approximately $375; and in 1968 he completed two contracts from which he grossed approximately $1,100 and netted approximately $265. This was the extent of his "adventure into the home improvement business" which, at the time of the hearing below, he no longer pursued.

One of the four jobs, and the one on which the claimant was injured, arose out of a contract to paint the apartment building of a Mr. Woods for the sum of $820. According to the employer, he intended to paint the building on Saturdays, Sundays and on weekdays after his regular working day with General Motors. On the day before he was to begin painting, he encountered the claimant and an individual named Buckley, both of whom he had known for sometime and "they said they had been down to the house looking for me and I asked what he [the claimant] wanted and he said he was wanting to get a job so he could earn some money to pay a couple of traffic tickets he got and if he didn't pay them he was going to get put in jail. * * * I told him I did have a job painting that house, that I was going to start on Friday, which was the next day, and if he wanted to come up and I would give him $2.00 an hour until we finished the job."

The next morning, Friday, September 13, 1968, the claimant, Payne, and Buckley reported for work. When questioned concerning Buckley's employment, the employer stated that "Payne wouldn't have no way to get to work if he didn't ride with Buckley. They are neighbors." Payne and Buckley worked at the Woods' apartments all that day and the next. On Monday, September 16, 1968, at approximately 6:30 p.m., the claimant was

injured when he fell from a ladder as a result of which he was hospitalized for a "compound facture of the leg and crushed ankle." Buckley continued to work on the job until it was completed several days later.

By order dated July 22, 1970, the Commission found that the claimant was not a casual employee as the term is used in the Act and that at the time of the hearing he continued to suffer from a temporary total disability. Compensation was awarded at the rate of $53.33 per week dating from December 17, 1968. Additionally, the employer, as a non-insurer, was assessed the sum of $150 plus 15 percent of the award and any subsequent awards of compensation not to exceed $1,500. Md. Code, Art. 101, § 91 (b).

At the hearing before the Commission, the claimant's version of the circumstances surrounding his employment differed substantially from that given by the employer. He stated that at the time of his encounter with the employer on the street he was told by the employer that in addition to the contract to paint the Woods' apartments, "he had another job, a house and another barn to paint. * * * He had enough work to keep me busy, he told me that." Payne further stated that at the time he went to work for Winters he was unemployed and although he agreed that he had mentioned a traffic ticket to the employer, he stated: "That wasn't the basis of the job."

Md. Code, Art. 101, § 67 (3) which was in effect at the time of the hearing below, exempts "casual employees" from the terms and conditions of the Workmen's Compensation Act. Although the Act contains a definition of an employer (§ 67 (2)) and an employee (§ 67 (3)),[2] it is silent with respect to the intended meaning or definition of the term "casual." However, the classification has been the subject of consideration by the Court of Appeals of Maryland in a number of cases. As stated in *Moore v. Clarke*, 171 Md. 39, "in ordinary usage, 'cas-

2. Both sections were revised by Ch. 119 of the Acts of 1971, *supra.*

ual', while taking some color from its context, is readily understood as having a reasonably certain and definite meaning, but as used in the Workmen's Compensation Law, it is a word of indefinitely varied import." Thus, "the application of the term should be made in each case according to the particular facts presented." *Clayburn v. Soueid, Inc.*, 239 Md. 331.

Notwithstanding this obviously sound approach to the issue, the Court of Appeals over the years has of necessity articulated certain criteria, the absence of which or the presence of which, have been found by the Court to constitute relevant and meaningful factors in reaching a determination whether an individual is, in fact, a casual employee within the meaning of the Workmen's Compensation Act. A common thread, running throughout substantially all the cases, indicates that a principal and compelling factor is the nature and scope of the employer's business and whether the services being rendered by the employee-claimant at the time of his injury were in furtherance of, central to and being performed within the ambit of the employer's regular business.

Over half a century ago the Court of Appeals in *State Accident Fund v. Jacobs*, 134 Md. 133, held that an individual employed during a vegetable packing season to haul produce for a packer whenever needed, which was only occasionally, was not a casual employee within the meaning of the Workmen's Compensation Act. In so holding, the Court concluded, at 135: "The question whether an employment is casual must be determined with principal reference to the scope and purpose of the hiring rather than with sole regard to the duration and regularity of the service."

Following this decision, the Court held in *Hygeia Ice and Coal Co. v. Schaeffer*, 152 Md. 231, that one employed by an ice company to shingle part of a building under the direction of the company's general manager and to be compensated according to the number of squares he completed was not, as a matter of law, a casual employee. The Court stated that notwithstanding "the duration of

the employment was indefinite, possibly terminating in a few days", the repair of the ice company's building was "essential to the successful conduct of its business" and, accordingly, concluded: "We are unwilling to hold, as a matter of law, that the scope, purpose and nature of the employment was casual."

While the nature of the employer's business and the relationship of the employee-claimant to the business is an important factor, it is not necessarily paramount. Another relevant ingredient would appear to be the length or duration of the employment and whether there had been any prior or intended future employment. In *Marvil v. Elliott*, 164 Md. 659, a dispute had arisen between the owner of a house and a contractor employed to remove the house from one site to another with respect to whose responsibility it was to saw off certain eaves from the house in order to facilitate its removal. The house owner refused to authorize a carpenter in his employ to do the work asserting it was the contractor's responsibility under his contract. The carpenter, notwithstanding, offered to do the work as an employee of the contractor and his offer was accepted. While sawing off the eaves, the carpenter was injured and sought workmen's compensation from the contractor. Although his employment in this instance would appear to be within the scope of the contractor's regular business, the Court, nevertheless, found him to be a casual employee, asserting:

> "In the present case the appellee [claimant] was allowed by a property owner for whom he was working to be engaged temporarily by a contractor in charge of other work on the same premises. Upon the completion of the task to which the appellee was thus assigned, and which would probably have required not more than two or three hours for its performance, he was to resume his work for the first employer. The brief service he was undertaking to render for the contractor had no relation to any engage-

ment between them in the past or future. It was limited to a particular occasion beginning and ending within a short portion of a single day. In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute." *Marvil v. Elliott, supra* at 665.

Again, in *Moore v. Clarke, supra,* a jockey, regularly employed to ride for a horse owner named Burch, was employed by a Mrs. Clarke to ride her horse in a single race during which he was injured. He was found to be a casual employee within the meaning of the Act, the Court stating, at 54:

> "In this case the employment extended over a period of but a few minutes at most, and while it was a part of a business in which the employer was regularly engaged, it was single, isolated, complete in itself, was connected with no past or future employment, and when it was finished all contractual relations between the employer and the employee ceased. It was incidental and fortuitous in the sense that, while the employer must have employed some one to ride her horse, she was under no obligation to employ Hanford, and that while his business was riding horses in races, he was, until she employed him for that service, under no obligation to ride her horse in that race, or indeed to ride in it at all. The distinction between a casual employment and a regular employment is illustrated by his relation to Burch, by whom he was employed at a fixed monthly compensation to ride Burch's horses, when requested by Burch, in any race in which they were entered, and his relation to Mrs. Clarke, by whom he was employed for a single race." [3]

3. The holding in *Moore* was reaffirmed in *East v. Skelly,* 207 Md. 537.

*Lupton v. MacDonald,* 241 Md. 446, would appear to be the latest case coming before the Court of Appeals involving the statutory meaning of casual employee. There, the employer MacDonald, who conducted a tri-state logging and saw-mill business with headquarters in West Virginia, had a contract to cut timber in Maryland. He made arrangements with a Maryland timber cutter to do the work. After cutting timber for approximately two weeks, the Maryland timberman employed Lupton "to help finish the job" which he stated would have taken not over a day since there were only seven trees remaining to be cut. Lupton was injured while so employed. In agreeing with the Workmen's Compensation Commission and the lower court that Lupton was a casual employee not covered by the Workmen's Compensation Act, the Court of Appeals quoted with approval the statement set forth in *Clayburn v. Soueid, Inc., supra* at 337: "Nevertheless, criteria have been developed, in our Court and in other jurisdictions which have similar statutes, to which we have given weight in determining whether an employment is casual or regular. These criteria include the nature of the work, the duration of the employment, and whether it is occasional, incidental, or a usual concomitant of the employer's business."

While courts of other states and the text authorities appear to be generally in accord with the guiding principles enunciated by our Court of Appeals in determining, in any given factual situation, whether the employment is casual, they would seem to have considered additional factors in resolving the issue of casualness. It has been held that the temporary employment of a workman regularly employed by another employer would point to the casualness of the temporary employment. *Passarelli v. Monacelli* (Pa. 1936) 183 Atl. 65. And where an individual is employed on an emergency basis, the employment would be deemed casual, such as the employment of a laborer by a construction company to shovel snow after an unusually heavy storm. *Alkon v. Senior and Palmer* (N.J. 1935) 182 Atl. 33. While duration of the em-

ployment is a factor, "an employment is not rendered casual because it is not for any specified length of time, or because the injury occurs shortly after the employee begins work." *Gardner v. Main Street M.E. Church* (Iowa 1933) 250 N.W. 740.

The cases from other states are collected and analyzed in annotations reported in 33 A.L.R. 1447; 60 A.L.R. 1191; 107 A.L.R. 941; *Larson's Workmen's Compensation Law,* Vol. 1A, Sec. 51; *Schneider's Workmen's Compensation,* Sec. 29.

Turning to the facts of the case at bar and invoking the guidelines heretofore discussed, we would be hard pressed to agree with the finding that the claimant's employment here was other than casual if it were undisputed that the claimant was employed solely to enable him to earn sufficient money to pay off the traffic tickets he had received, as asserted by the employer. This, however, was not the only evidence before the Commission and the lower court, for the claimant testified that the traffic tickets were not "the basis of the job." According to his version of the employment, he was told by the employer that in addition to the contract to paint the Woods' apartments, the employer had contracted to paint another house and a barn and that "he had enough work to keep me busy * * *."

It is well settled that "where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue as to the relation that existed between the parties is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, * * * but where the essential terms and manner of employment are undisputed, the question is one of law for the Court." *Clayburn v. Soueid, Inc., supra* at 337; *Uninsured Employers' Fund v. Algie Merritt, et al.,* 13 Md. App. 73.

Since the factual circumstances surrounding the employment here are in dispute, their resolution is to be determined by the trier of facts, in the first instance by the Workmen's Compensation Commission and, ulti-

mately, by the lower court. Unless we find on the record before us that the lower court was erroneous in its findings of facts and application of the relevant law, its holding must be affirmed. *Maryland Bureau of Mines v. Powers,* 258 Md. 379; *Smith v. State Roads Commission,* 240 Md. 525. It is, of course, well established that the decision of the Workmen's Compensation Commission is prima facie correct and the burden of proving or, more accurately, the burden of persuading the lower court otherwise is upon the party attacking the decision. Md. Code, Art. 101 § 56 (c) ; *Uninsured Employers' Fund v. Algie Merritt, et al., supra.* Here, the lower court was unpersuaded and we cannot say that its conclusion was erroneous.

The employer places great stress upon the fact that his regular course of employment was with General Motors Corporation; that he had only been in the home improvement business for a period of two years and then only on a part-time basis; that he had performed only four jobs from which he had netted less than $1,000; and that this was the first occasion he had utilized the services of any employees. In brief, he argues that in a very real sense he was a casual employer.

But whether he was a casual or part-time employer does not control or alter his relationship with an employee or automatically place that employee in the category of casual employment. Here, the Commission and the lower court found that the employer was in the home improvement or contract painting business. He had a license issued by the State of Maryland to engage in "construction or home improvement." His "pick up" truck carried a sign "Winters Painting Contractor."

While it is true that the claimant's employment was for an indefinite duration and conceivably would have continued for no more than a few days or weeks, this, alone, does not compel a finding that the employment was casual. We think it clear that the employment of the claimant as a painter was within the scope of the employer's business and, at the time of the injury, his ser-

vice was concomitant to and in furtherance of the employer's regular, although part-time, business. Under the circumstances, we have no reason to disturb the finding of the lower court that the claimant was not a casual employee within the meaning of the Workmen's Compensation Act.

*Order affirmed.*
*Appellant to pay the costs.*