504 A.2d 660

**John C. LEONARD, III**

**v.**

**FANTASY IMPORTS, INC.**

**No. 685, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 11, 1986.

Christopher A. King, Andrew E. Greenwald, Joseph, Greenwald & Laake, P.A., Hyattsville, for appellant.

Mallon A. Snyder, Rockville, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ALPERT, JJ.

ALPERT, Judge.

In this appeal, we consider whether the appellant was an employee within the ambit of the Maryland Worker's Compensation Act and thus barred from maintaining suit for common law tort remedies against the appellee.

Appellant, John C. Leonard, III, filed a civil tort action against appellee, Fantasy Imports, Inc., in the Circuit Court for Montgomery County (Miller, J., presiding) for an injury sustained by appellant on August 17, 1982. Appellee's motion for summary judgment was granted by the court on April 17, 1985, and appellant noted this appeal in which he contends:

> The trial court erred in holding that, as a matter of law, appellant was an employee of appellee at the time of the injury, and that he is barred, by the exclusive remedy provisions of Maryland's Worker's Compensation Act, from bringing a civil action in tort.

This case was decided on a motion for summary judgment pursuant to Maryland Rule 2–501.

> In reviewing the propriety of the trial court's action on a motion for summary judgment, the appellate court is concerned with whether there was a dispute as to any material fact, and if not, whether the moving party was entitled to judgment as a matter of law. In considering the matter, the duly shown facts which would be admissible in evidence and all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion.

*Washington Homes v. Interstate Land Development Company,* 281 Md. 712, 717–18, 382 A.2d 555 (1978); *see also Woodward v. Newstein,* 37 Md.App. 285, 377 A.2d 535.

Appellant contends that he should not have suffered summary judgment against him because, at worst, from his point of view, there was a genuine dispute of material fact in that the undisputed evidence, at the very least, gave rise to a permitted inference that he was not a *regular* employ-

ee of the appellee. The appellant goes further and maintains that, if there was no genuine dispute of material fact, it was because the only reasonable conclusion that could be drawn from the undisputed evidence was that he was not, as a matter of law, a regular employee of the appellee.

It is not a simple task to determine when the existence of the employer/employee relationship is purely a matter for legal determination and when it is for the trier of fact. Before exploring the law in this somewhat murky area, we must first examine the undisputed facts to which we must apply the applicable law.

## I. *The Undisputed Facts*

The appellant and Steven Kanstoroom had met during 1980, and in 1981 entered an oral agreement to form and operate a business under the name "Fantasy Apparel" for the purpose of selling sportswear and underwear. Fantasy Apparel was to conduct its business on the premises of Fantasy Imports, the appellee. This was possible as Kanstoroom was the president and sole shareholder of Fantasy Imports.

Appellant and Kanstoroom were to be equal contributors in Fantasy Apparel. Kanstoroom's contribution was the use of the physical plant, facilities, and computer of Fantasy Imports. This contribution was valued at $40,000. In order for appellant to raise his $40,000 share, it was agreed that appellant would perform certain tasks, primarily clerical work, for Fantasy Imports and would earn credit of six or seven dollars per hour, similar to the other paid office staff. Appellant never received cash for this office work, nor did he or Kanstoroom believe there was any obligation he be paid.

Although Fantasy Imports was engaged in the business of selling and servicing expensive imported cars, appellant never worked on any cars for credit toward his share of Fantasy Imports. In fact, Kanstoroom, in his deposition, stated that:

Up until this John Watson car [repair, when claimant was injured], I really don't believe that he worked on customers' cars. We had a mechanic. We had a machinist. We had a mechanic's helper and they really didn't want [appellant] in the shop because they, you know, they're cliquish.

Appellant, however, was given free rein of the automobile shop and worked on his own car from time to time.

It is unclear from the record exactly how long appellant performed clerical work toward his share of the Fantasy Apparel contribution. In the spring of 1982, it became apparent to appellant and Kanstoroom that Fantasy Apparel would not be feasible. After that point, appellant ceased to perform clerical work for Fantasy Imports, but "would only really come around when he needed either to work on one of his [own] cars." On August 17, 1982, appellant, apparently without Kanstoroom's knowledge, performed mechanical repair work on a car owned by a Fantasy Import customer, John Watson. The repair work lasted some twenty hours. Appellant was injured as a result of this repair work. Ten months later, on June 17, 1983, appellant received a check for $240 from Fantasy Imports for work done on Watson's car.

## II. *The Trial Court's Decision*

In granting appellee's motion for summary judgment, the trial court concluded that, as a matter of law, appellant was a regular employee at the time of his injury. In light of the trial court's opinion that appellant was an employee of the appellee and thus limited to the Worker's Compensation Act, implicit in this finding is that appellant was *not* a casual employee. We need to address, therefore, both definitions.

## III. *The Law*

### A. *Employee*

In *Whitehead v. Safway Steel Products*, 304 Md. 67, 497 A.2d 803 (1985), the Court of Appeals reviewed the five

criteria "traditionally considered ... in determining whether or not an employer/employee relationship exists between two parties." *Id.* at 77, 497 A.2d 803.

> These criteria, developed from the common law standard for determining the master/servant relationship ... include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer.
>
> *Of the five factors, the factor of control stands out as the most important.*

*Id.* at 77–78, 497 A.2d 803 (emphasis added). *See, e.g., Mackall v. Zayre Corp.*, 293 Md. 221, 443 A.2d 98 (1982) (factor of control is "decisive"); *L. & S. Construction Co. v. State Accident Fund*, 221 Md. 51, 59, 155 A.2d 653 (1959) ("controlling" factor is that of control); *Keitz v. National Paving Co.*, 214 Md. 479, 134 A.2d 296 (1957) ("standing alone, none of these indicia, excepting [the factor of control], seems controlling in the determination as to whether such a relationship exists"). *See also Gilbert v. Washington Sub. San. Comm'n*, 304 Md. 658, 500 A.2d 1039 (1985).

### B. *Casual Employee*

■ The term "casual," as used in the Worker's Compensation Act, Maryland Ann. Code, Art. 101, § 21(c)(4) (Repl. Vol. 1985), is not defined in the statute, and thus we must look to case law. Because the conclusion that one is a casual employee precludes recovery under the Act, the courts "have refrained from giving a definition of the term 'casual employee' which must govern in all cases, but preferred to leave the decision of any case to be governed by its peculiar facts and circumstances." *Wood v. Abell*, 268 Md. 214, 221, 300 A.2d 665 (1973) (quoting *Hygeia Ice & Coal Co. v. Schaeffer*, 152 Md. 231, 238, 136 A. 548 (1927)). Because each "casual employee" decision by the Maryland appellate courts has thoroughly discussed each of the pre-

ceding cases, we need only to set forth the criteria and factors that were decisive in those cases.

Before reviewing the case law, it is important to note that each case arose from an appeal of the Workmen's Compensation Commission's (or a predecessor thereto) finding that an injured claimant was or was not a casual employee. In view of the fundamental principle that "the Workmen's Compensation Act is to be construed as liberally in favor of injured employees as its provisions will permit....," *Wood v. Abell*, supra [268 Md.] at 220, 300 A.2d 665, it was more difficult to show that a claimant was excluded from coverage, *i.e.*, that he was a casual employee.[1]

In *Hygeia Ice & Coal Co. v. Schaeffer, supra*, a worker hired by the appellant was injured while attempting repairs to the roof of the building where the ice and coal company was located. The company argued that its business was ice and coal, not roof repair, and that the claimant was at most a casual employee. The court held the employment was not casual as the repair work "was as essential to the successful conduct of its business as keeping machinery in repair, or the manufacture and delivery of its products...." *Id.* [152 Md.] at 240, 136 A. 548.

Six years later the Court of Appeals decided *Marvil v. Elliott*, 164 Md. 659, 165 A. 822 (1933). There, a carpenter, who was working by day for the owner of a house, was injured while helping an independent contractor remove eaves from the house—work which was to take only two or three hours. The independent contractor argued the claimant was not an employee and the Court of Appeals agreed, stating:

> [T]he brief service he was undertaking to render for the contractor had no relation to any engagement between them in the past or future. It was limited to a particular

---

1. In this case, for the first time, it is the *employer*, rather than the claimant, who seeks to have the claimant classified an employee. In other words, unlike the other "casual employee" cases, the *employer* hopes to avail itself of the "benevolent purposes" of the Act.

occasion beginning and ending within a short period of a single day.  In view of its restricted scope and purpose, it must be regarded as casual within the meaning of the Maryland statute.

*Id.* at 665, 165 A. 822.   In *Marvil,* the case turned on the duration of the employment and the fact that there was no obligation on the claimant's part to have done the work at all.

These criteria were found controlling in the "jockey" cases.  In *Moore v. Clarke,* 171 Md. 39, 187 A. 887 (1936), a professional jockey, who was accidentally killed while riding a race horse in a race, was held to be a casual employee. Although the claimant was regularly engaged as a jockey, in the fatal race he was riding for another employer, *whom he had no obligation* to ride for.  This, together with the fact that the duration of the subject employment was only a few minutes, was held to be conclusive that the claimant was a casual employee.  The holding in *Moore v. Clarke* was controlling in the second "jockey" case, *East v. Skelly,* 207 Md. 537, 114 A.2d 822 (1955).   In that case, although the claimant had ridden in horse races some ten or twelve times for the same employer, the court emphasized the fact that he was free to ride in any race for any employer and had no past or future obligation to the person employing him at the time of his injury.

In *Lupton v. McDonald,* 241 Md. 446, 217 A.2d 262 (1966), Lupton was injured while working for Milburn, who was under contract to cut and top trees for the appellee. The employment arose when another logger, who had been hired by Milburn, quit and Lupton was hired to "help finish the job" the other logger had abandoned.  In holding that Lupton was a casual employee, the court relied on the short duration of the employment—the job would take only one day to complete, and that the particular hiring there was unpredictable and sporadic in that the claimant had been hired for the day to replace another worker who had quit.

In *Wood v. Abell, supra,* the claimant was injured while engaged by Wood, the general manager of a county fair association, to help prepare the local fairgrounds for an upcoming event. Claimant was to be paid by the hour and was expected to perform various odd jobs as required by the association. The court noted that:

> No definite understanding was reached concerning the duration of [the] employment, but it was generally expected that [the claimant's] services would be needed for approximately one or two weeks. Clearly, no decision was reached that the [claimant] would be employed in the future or that the jobs would be continuous.

268 Md. at 217, 300 A.2d 665. Although Wood was normally employed as an airline pilot, and was involved with the County Fair Association in a volunteer capacity, the court focused not on the nature of the employment, *cf. Hygeia Ice and Coal, supra,* but on its duration.

The *Wood* court quoted from its decision in *Moore v. Clarke, supra,* where it stated that:

> There are criteria which, by what seems to be the weight of authority, have been given weight in determining whether a given employment is casual or regular, such as the nature of the work, [*Hygeia Ice & Coal Co., supra,* and *State Accident Fund v. Jacobs,* 134 Md. 133 [106 A. 255] (1919), and] the duration of the employment, whether it is occasional, incidental, accidental, or a usual concomitant of the employer's business.

*Wood, supra* at 222, 300 A.2d 665 (quoting *Moore v. Clarke,* 171 Md. at 53, 187 A. 887)). Summing up, the *Wood* court said:

> What has emerged from our prior decisions, therefore, is an elastic test for determining whether an employee is "casual" or "regular," and the nature of the employer's work and the scope and purpose of the hiring are merely included among the factors to be considered. But it is equally clear from the prior cases that duration of em-

ployment is at least as important in reaching the ultimate solution.

*Id.* [268 Md.] at 223, 300 A.2d 665. In holding the claimant to be a casual employee as a matter of law, the court pointed to the undisputed fact that the claimant was hired to do odd jobs on an indefinite basis, and that the employment was of short duration—approximately one week.

Each of these cases is distinguishable from *Clayburn v. Soueid,* 239 Md. 331, 211 A.2d 728 (1965). There, the employer was in the business of building houses. The claimant was picked out of a roadside labor pool by the employer to work for a few days. After a few days, the employer asked the claimant if he wanted a steady job. The claimant answered affirmatively, received a raise in his hourly pay, and proceeded to work for the next four months for the employer, with the exception of a few days when the claimant worked for other people. The claimant was injured while working for the employer and the Court of Appeals held that, when injured, he was a "regular," not a "casual," employee. The court emphasized that "the evidence [was] clear that [the claimant's] employment ... was steady and pursuant to a continuing and individually arranged agreement." *Id.* at 340, 211 A.2d 728. Additional factors that set *Clayburn* apart from the other cases holding a claimant to be a casual employee, were that the subject employment was for more than one job or a single piece of work, and that it was for a substantial duration—four months.

A review of these cases indicates that if the particular employment during which the injury occurs is of short duration, of a temporary or sporadic nature, and not pursuant to any agreement whereby there is a continuous obligation by the claimant to work for the employer, that employment can be said to be casual. We are careful to note, however, that these are merely criteria to be considered, and are not offered as a concise and controlling definition.

With these discussions of these applicable principles for determining "regular" versus "casual" employment, let us now return to the facts surrounding the injury in the case *sub judice.*

### IV. *Judgment as a Matter of Law*

Viewing those facts which would be admissible in evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee, we conclude that appellant, as a matter of law, was a "casual employee." That "casual employee" cases can be determined as a matter of law was decided twenty years ago in *Clayburn v. Soueid,* 239 Md. 331, 211 A.2d 728 (1965). There, the Court of Appeals, recognizing that the determination of casual employment "should be made in each case according to the particular facts," *id.* at 337, 211 A.2d 728, nevertheless stated that "where the determinative facts were not in dispute, we have held, as a matter of law, on the facts in the particular case, that the employment was casual." *Id.* Those principles were applied by us in *Yelton v. Higgins,* 13 Md.App. 599, 284 A.2d 857 (1971). In *Yelton* we recognized that where the terms and manner of employment are disputed and different inferences can be drawn therefrom, the question of employment was to be determined by the trier of the facts, but where the essential terms and manner of employment are undisputed, the question is one of law for the court. *Id.* at 604, 284 A.2d 857. *See also Berkey v. Delia,* 287 Md. 302, 324–33, 413 A.2d 170 (1980).

■ In the instant case, there is no dispute as to the arrangement between the parties or the incidents surrounding appellant's injury. Therefore, the question of employment in this case is properly a matter of law and not a question of fact for the jury.

■ Nowhere in the record is there any fact or reasonable inference to be drawn therefrom that Fantasy Imports controlled appellant's work at the time of the injury. In fact, the evidence is clearly to the contrary. Although

appellant received credit for his work in the office, it is undisputed that appellant was not under any obligation to perform the work save for his agreement that, if he did, he would receive credit. Even if a factfinder could infer from that agreement an obligation to perform the work, and thus conclude that appellant was indeed an employee during that phase of the relationship, that phase terminated in the Spring of 1982. Appellant was nonetheless permitted to use the facilities for his own purposes during the next few months, and in August of 1982 appellant worked for some twenty hours on a customer's car, apparently without Kanstoroom's knowledge. The record is devoid of any evidence that appellant performed any work or service on behalf of appellee after the clerical work terminated until that isolated occasion when work began on the Watson vehicle.

Applying the criteria to be considered in deciding whether appellant was a "regular" or "casual" employee, it would seem that appellant was at most a casual employee at the time of the injury. Although he had been engaged by appellee in the past to do clerical work, he was under no obligation to continue to do so after the Spring of 1982. Appellant had never worked on a customer's car before John Watson's car, and he was, again, under no obligation to do so. Finally, the particular job for which he was "hired" was brief in nature and of short duration. Ten months later appellant was paid for twenty hours work at the rate of $12.00 per hour. It is not usual that an "employee" gets paid ten months after he performs services for the master. If any reasonable inference is to be drawn from the method of payment surrounding the work which precipitated appellant's injury, it is that he was not an employee. In viewing the evidence in a light most favorable to appellant, the party against whom summary judgment was entered, it is abundantly clear that at the very least a rational trier of the fact could decide that he was not an employee. But when we apply the applicable law to the undisputed facts and the "reasonable" inferences to be drawn from those facts, we are compelled to hold that

appellant was at best a "casual employee" of appellee. We believe that reasonable minds could not differ as to that fact and, therefore, we hold that the trial court erred in entering summary judgment in behalf of the appellee.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.