988 A.2d 1120

**INJURED WORKERS' INSURANCE FUND**

v.

**ORIENT EXPRESS DELIVERY SERVICE, INC., et al.**

No. 2283, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Feb. 3, 2010.

**440**

442

Michael R. McCann of Towson, for appellant.

J. Jonathan Schraub (Sands, Anderson, Marks & Miller on the brief), for appellee.

Panel: SALMON, WRIGHT and Lawrence F. Rodowsky, (Retired, Specially Assigned), JJ.

WRIGHT, J.

Appellant, Injured Workers' Insurance Fund ("IWIF"), is an independent unit of the government of the State of Maryland that provides workers' compensation coverage to employers. In March 2008, IWIF filed an action in the Circuit Court for Montgomery County against appellee, Orient Express Delivery Service, Inc. ("OEDS") and its owners, James Follin and John McKenna,[1] seeking to recover premiums allegedly owed under the workers' compensation policy issued by IWIF to OEDS. OEDS filed a motion for summary judgment, which the circuit court granted at the conclusion of a hearing held on November 19, 2008. The circuit court also denied, as moot, two discovery motions filed by IWIF: a motion to amend the court's scheduling order and a motion to compel. On Novem-

---

1. IWIF sued OEDS, Follin, and McKenna, jointly and severally, for fraud. The fraud counts were later dismissed by the court in a motion for summary judgment. IWIF does not challenge that ruling on appeal. Therefore, Follin and McKenna are no longer parties to this case.

ber 26, 2008, the circuit court entered orders denying the motions. IWIF then filed this timely appeal, presenting five issue [2] for our review, which we summarize as follows:

I. Did the circuit court err in granting summary judgment?

II. Did the circuit court err in failing to substantively rule on the discovery motions?

We hold that the circuit court erred in granting the motion for summary judgment and shall reverse. We need not address the second question because a new scheduling order will be entered upon remand.[3]

### Factual Background

OEDS, a Maryland corporation, operates a local messenger delivery business in Maryland and the District of Columbia. As part of its business, OEDS has contracts with other companies to provide messenger or delivery persons to fulfill business needs. Orient Express Services ("Orient Express"), a sister Maryland company, provides messenger and delivery personnel to delivery companies in the Washington, D.C. metropolitan area, and "provides centralized employment and

---

**2.** We have combined the first four issues presented by IWIF because they are subparts under the umbrella issue of whether the court erred in granting summary judgment. The last issue remains unchanged. IWIF's original questions were:

A. Did the Circuit Court err in ruling that Maryland Rule 2–501(b) requires the filing of an affidavit with a response to a motion for summary judgment?

B. Did the Circuit Court err in finding that IWIF did not file an affidavit compliant with Rule 2–501(b) with its response to motion for summary judgment?

C. Did the Circuit Court err in ruling that IWIF was required to file an affidavit that specifically refuted the conclusory statement in OEDS's affidavit?

D. Did IWIF submit sufficient evidence to generate a dispute of material fact precluding summary judgment in OEDS's favor?

E. Did the Circuit Court err in failing to substantively rule on IWIF's discovery motions and granting summary judgment based on an incomplete factual record?

**3.** Maryland Rule 2–504. ( [T]he court shall enter a scheduling order in every civil case . . . ).

payroll services to OEDS." OEDS and Orient Express are owned by the same two people, James Follin and John McKenna. OEDS uses Orient Express's messengers almost exclusively. For example, in 2006, 99.8% of the total amount OEDS paid to messenger or delivery persons, was paid to Orient Express. The remaining 0.2% was paid to Contractor Management, Inc. ("CMI"). Since 2005, the amount of work OEDS derived from other courier companies has fluctuated between less than 5 percent and twelve to fourteen percent.

Conversely, with few exceptions, Orient Express messengers and delivery persons do not work for any courier company other than OEDS. Each individual performing delivery services for OEDS executed both an independent contractor agreement and a sole proprietor status form. The effect of these forms on the legal status of the individuals—whether they are "independent contractors/sole proprietors" or employees of OEDS—is the heart of this case.

In December 2003, OEDS submitted a signed application to IWIF for a workers' compensation insurance policy. In the application, OEDS represented that it had six employees and that all of the company's deliveries were performed by subcontractors, who had their own workers' compensation insurance policies. In a signed addendum to the application, James Follin, an owner and officer of OEDS, acknowledged that payments to subcontractors would be included when IWIF determined the amount of the premium owed to OEDS, unless "certificates of workers' compensation insurance are obtained" for those subcontractors, which would serve as proof that the subcontractors had their own insurance policies. IWIF issued a workers' compensation and employers' liability insurance policy ("Policy") to OEDS, providing coverage for the period December 1, 2003 to December 1, 2004. The Policy was renewed for the periods December 1, 2004 to December 1, 2005, December 1, 2005 to December 1, 2006, and December 1, 2006 to December 1, 2007.

The premium owed by OEDS under the Policy is based on (1) the total remuneration OEDS paid to its officers and

employees, and (2) the amount of remuneration paid to subcontractors unless OEDS provides IWIF with proof that those subcontractors secured their own workers' compensation insurance. The Policy states, in pertinent part:

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common basis. The premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Worker[s'] Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis.

This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers' compensation obligations.

Because it is unknown at the beginning of a policy term how much remuneration will be paid to employees and uninsured contractors, IWIF charges an estimated premium based on the amount of payroll that OEDS estimates it will have for the policy period. The Policy requires OEDS to maintain records and provide those records upon request so that, at the conclusion of the policy period, IWIF may conduct an audit and calculate the final premium owed.

In January 2007, as part of this audit process, IWIF requested documentation from OEDS regarding payments made to any subcontractors. In response, OEDS produced documents which disclosed that it paid over $2 million during the 2005–2006 policy period to Orient Express. IWIF requested OEDS to provide a certificate of insurance or other proof of workers' compensation coverage for Orient Express. OEDS did not provide this proof.

Additional facts will be provided in the relevant sections below.

### Procedural History

On March 25, 2008, IWIF filed a complaint against OEDS and its owners, James Follin and John McKenna, alleging breach of contract and fraud. The gravamen of the claim was that OEDS and its officers concealed information from IWIF relating to individuals who performed delivery services for OEDS and who, according to IWIF, should have been counted toward premium assessments under the Policy.

On May 15, 2008, OEDS filed a motion to dismiss or for summary judgment ("first motion for summary judgment"). OEDS argued that all of its messengers are "sole proprietors/independent contractors" that fall outside of Maryland workers' compensation law, and therefore, IWIF had no obligation to include them in the determination of the premium. OEDS asserted that, when first hired, all messengers executed independent contractor agreements and sole proprietor forms. In support of its first motion for summary judgment, OEDS submitted the affidavit of one of its owners, John McKenna. The McKenna affidavit stated, in part:

6. During [2003 to 2007], OEDS had between six and eight clerical employees and a payroll of approximately $150,000. . . .

11. All of the messenger/delivery persons retained by [Orient Express] . . . are sole proprietor/independent contractors.

12. Each of these messenger/delivery persons executes an independent contractor agreement with [Orient Express]. . . .

13. In addition to the independent contractor agreement, each messenger/delivery person executes a form provided by the Maryland Workers' Compensation Commission entitled "Sole Proprietor Status As A Covered Employee Form". . . .

15. Each independent contractor utilized by OEDS through [Orient Express], to the best of my knowledge, completed and executed a Sole Proprietor Election Coverage Form by which the independent contractor

has indicated his or her status as a sole proprietorship and election **NOT** to become a covered contractor under the provisions of Maryland Workers' Compensation. . . .

(Emphasis in original).

On July 14, 2008, the circuit court held a hearing on the first motion for summary judgment. The court entered an order on July 22, 2008, in which it granted the motion with respect to the fraud claims, and denied the motion ". . . without prejudice to renewing the motion for summary judgment at close of discovery as to [the breach of contract claims]."

On August 6, 2008, IWIF filed a motion to amend the scheduling order, requesting time to conduct discovery until September 26, 2008. IWIF argued that an extension was necessary because the day after the circuit court's ruling on the first motion for summary judgment was the original discovery deadline.[4] Also, on August 6, 2008, OEDS filed a renewed motion for summary judgment ("first renewed motion for summary judgment"), noting that IWIF had not undertaken any discovery. OEDS again relied upon the McKenna affidavit, asserting that "there is no possible disputed issue of fact" that the messengers are independent contractors/sole proprietors.

On August 27, 2008, the circuit court entered an order granting IWIF''s motion to amend scheduling order; extending the discovery deadline until September 26, 2008; and extending the dispositive motions deadline until October 10, 2008. The court also denied OEDS's first renewed motion for summary judgment. On October 7, 2008, OEDS produced approximately 4,500 documents. On October 9, 2008, OEDS produced additional documents, including tax returns, general ledgers, W–2 forms and 1099 forms.[5] IWIF then filed a

---

4. The original discovery deadline was July 23, 2008. The court's ruling on the motion was entered on July 22, 2008.

5. OEDS argues in its brief that "[t]he vast majority of the 'thousands of documents' referred to by IWIF were in fact multiple, identical copies

second motion to amend scheduling order. IWIF requested that the court amend the order to allow IWIF a brief period of time to review the documents and complete its deposition of McKenna, because OEDS produced the documents within days of the dispositive motions deadline. IWIF requested that the court set October 24, 2008, as the discovery deadline and October 31, 2008, as the dispositive motions deadline. IWIF subsequently filed a motion to compel, requesting that, if the court granted IWIF's second motion to amend scheduling order, it should also enter an order compelling McKenna to appear for deposition.

On October 7, 2008, OEDS filed a second renewed motion for summary judgment. OEDS, once again, relied upon the McKenna affidavit previously filed with its first motion for summary judgment. OEDS argued that, based on the "dispositive, undisputed facts," all of its messengers were "independent contractors/sole proprietors" and not employees of OEDS. On October 27, 2008, IWIF filed a response to the second renewed motion for summary judgment, arguing that, even if the court considered the incomplete factual record before it, there were disputes of material fact regarding whether the messengers were employees or "independent contractors/sole proprietors." IWIF attached 17 exhibits and several hundred documents to its response.

On November 19, 2008, the circuit court held a hearing on OEDS's second renewed motion for summary judgment. The court was unable to locate the 17 exhibits that were filed with the motion. The court continued with the hearing and inquired whether there was an affidavit from IWIF specifically stating that the messengers are employees and not independent contractors. Counsel for IWIF responded, "[n]o, there's no affidavit that says these folks are employees, that's cor-

---

of the executed sole proprietor and independent contractor agreements for each worker—documents that had always been available to IWIF and indeed had been provided to IWIF's counsel **prior to** the commencement of the litigation." (Emphasis in original).

rect...." The court then granted the motion for summary judgment in a ruling from the bench, stating in part:

> There's been no affidavits filed, which are required by the rule to controvert the material facts in dispute. There are in the motion ... assertions, there are references to a deposition transcript that set forth facts. But even in looking at those facts, I don't believe that those facts, even if they were under affidavit, I don't believe those facts show that these people were not independent contractors or were not sole proprietors.

> \* \* \*

> So, at this point it seems clear to me, based upon the information contained in the motion, that there is no dispute as to the material fact that these people were independent contractors or sole employees that had opted out of this. They were not the employees of OEDS and, therefore, I'm going to grant the motion for summary judgment.

With respect to IWIF's second motion to amend scheduling order, the court stated:

> [A]t this point the motion for summary judgment having been granted there's no pending claims. There's no pending action. So I would deny the motion to amend the scheduling order.

The court similarly disposed of IWIF's motion to compel, stating that "[the motion] is moot at this point, given the ruling [on] the motion for summary judgment."

### Discussion

The standard of review applied in reviewing a grant of a motion for summary judgment is well-established in Maryland. "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact' and 'the party in whose favor judgment is entered is entitled to judgment as a matter of law.'" *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294, 936 A.2d 343 (2007) (quoting Md. Rule 2–501(f)). The reviewing court is obliged to conduct an independent

review of the record to determine if there is a dispute of material fact. *Id.* (citing *Wells Fargo Home Mortgage, Inc. v. Neal,* 398 Md. 705, 714, 922 A.2d 538 (2007)) (additional citations omitted). "A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute." *Berringer v. Steele,* 133 Md.App. 442, 470–71, 758 A.2d 574 (2000) (citations omitted). Mere general allegations of conclusory assertions will not suffice. *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 738, 625 A.2d 1005 (1993); *accord Gunby v. Olde Severna Park Improvement Ass'n, Inc.,* 174 Md.App. 189, 235, 921 A.2d 292, *aff'd,* 402 Md. 317, 936 A.2d 365 (2007).

⬛ Because the reviewing court "has the same information from the record and decides the same issues of law as the trial court, its review of an order granting summary judgment is de novo." *ABC Imaging of Wash., Inc. v. Travelers Indem. Co. of Am.,* 150 Md.App. 390, 394, 820 A.2d 628 (2003) (internal quotation marks omitted) (citations omitted). When conducting its de novo review, all reasonable inferences must be resolved in favor of the non-moving party. *Conaway v. Deane,* 401 Md. 219, 243, 932 A.2d 571 (2007) (citations omitted). "Even when the underlying facts are undisputed, if the undisputed facts are susceptible of more than one permissible factual inference, the choice between those inferences should not be made as a matter of law, and summary judgment should not be granted." *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990) (citation omitted). The standard applied by the Court is not whether the trial court was clearly erroneous but whether the trial court was legally correct. *Id.* (citations omitted).

## A. A response to a motion for summary judgment is not required to be supported by affidavit.

⬛ The circuit court erred as a matter of law in concluding that the Maryland Rules require a response to a motion for summary judgment to be supported by affidavit. Maryland Rule 2–501(b) identifies the requirements of a response to a motion for summary judgment:

> A response to a written motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit *or other written statement under oath.*

(Emphasis added). Thus, the Rule contemplates that an affidavit will not be the exclusive means to oppose a motion for summary judgment. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md.App. 217, 263 (1996) (citations omitted), *aff'd,* 346 Md. 122, 695 A.2d 153 (1996).

Indeed, a response to a motion for summary judgment may be supported by "any type of evidence that is admissible at trial." *Id.* at 263, 674 A.2d 106 (citation omitted). Deposition testimony, for example, constitutes a "statement under oath" and "qualifies under Rule 2–501 as evidence that can controvert facts submitted under oath by the moving party." *Shipley v. Perlberg,* 140 Md.App. 257, 269, 780 A.2d 396 (2001); *see also Educ. Testing Serv. v. Hildebrant,* 399 Md. 128, 144, 923 A.2d 34 (2007) (deposition testimony or answers to interrogatories may constitute "other statement[s] under oath"); *Imbraguglio v. Great Atl. & Pac. Tea Co., Inc.,* 358 Md. 194, 207, 747 A.2d 662 (2000) ("A transcript of former testimony possesses the same indicia of reliability as an affidavit in the summary judgment context.").

In the present case, IWIF argued that McKenna's deposition testimony supported that the messengers were employees of OEDS and not independent contractors. The court, however, asked IWIF several times whether it had an affidavit which "state[s] that these people are not independent contractors or sole proprietors[.]" At another point in the hearing, the court stated:

[OEDS] filed a motion for summary judgment, which is under the law required to be supported by an affidavit. In those affidavits it says all these people are independent contractors or sole proprietors. . . .

So, in order to contest that, to put it into a position of equipoise there needs to be not just a motion filed, but an affidavit showing that these material facts are truly in dispute. . . . That's what I'm looking for.

In granting the motion, the court again stated that an affidavit from IWIF "is required by the rule to controvert the material facts in dispute."

OEDS argues that the court's misunderstanding with regard to affidavits is a red herring, for two reasons: 1) IWIF submitted two affidavits, and 2) the court stated that, "even if [the deposition testimony] was under affidavit, I don't believe those facts show that these people were not independent contractors or were not sole proprietors." We disagree. The two affidavits [6] that IWIF filed as exhibits to its opposition and handed to the court for its consideration during the hearing did not specifically state that the messengers were employees, as the court believed was required. Also, the court rendered its decision without the benefit of reviewing each of the 17 exhibits. Nothing in the court's ruling indicates that the deposition testimony was seriously considered. Rather, the court made clear that its primary basis for granting the motion was the absence of an affidavit *specifically stating* that the messengers were employees of OEDS. This misapplication of the summary judgment rule constitutes legal error.

**B. Summary judgment was inappropriate because there are disputes of material fact.**

This case is not appropriate for disposition on summary judgment because there are disputes of material fact. We

---

6. The two affidavits were filed by Charles Robison and David Spear. These affidavits will be discussed in further detail in the sections that follow.

provide some background on workers' compensation law to illustrate.

■ The Maryland Workers' Compensation Act ("Act") requires all employers to obtain workers' compensation insurance for "covered employees." Md.Code (1991, 2008 Repl. Vol.), Labor & Employment Article ("LE"), § 9–402(a). Employers must pay workers' compensation benefits to any "covered employee" who suffers accidental personal injury arising out of and during the course of employment. LE § 9–501. In determining who is a "covered employee," courts and the Workers' Compensation Commission apply the common law definition of the employer-employee relationship, which looks to five factors or criteria: (1) whether the employer selected or hired the worker, (2) whether wages were paid to the worker, (3) whether the employer had the ability to discharge the worker, (4) whether the employer has the ability to control the worker's conduct, and (5) whether the worker's work is part of the employer's regular business. *See Whitehead v. Safway Steel Prods., Inc.*, 304 Md. 67, 77–78, 497 A.2d 803 (1985) (citations omitted).

■ Of these five criteria, the "decisive test" is "whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done." *Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98 (1982). The five factors are relevant only to the extent that the right of overall control is implicit in each. *L.M.T. Steel Prods., Inc. v. Peirson*, 47 Md.App. 633, 636, 425 A.2d 242 (1981). The only test with "any special conclusive significance" is the power or right to control. *Id.* at 635, 425 A.2d 242. *See also Whitehead, supra*, 304 Md. at 78, 497 A.2d 803 ("[s]tanding alone, none of these indicia, excepting (4) the factor of control, seems controlling in the determination as to whether such a relationship exists") (citations and emphasis omitted).

■ IWIF filed two affidavits with its response to the motion for summary judgment. In the first affidavit, Charles Robison, field audit supervisor for IWIF, challenged OEDS's

contention that the messengers' execution of the sole proprietor status form is dispositive of their status as sole proprietors. Robison stated in his affidavit that the form is not conclusive, but rather is considered "some evidence" of sole proprietor status. Additionally, the form indicates that it is "not binding." Robison's affidavit contradicted OEDS's position that the messengers became sole proprietors by virtue of signing these forms. In the second affidavit, David Spear, of IWIF, related the facts pertaining to a workers' compensation claim filed by one of the messengers, Yvonne McCants, who was injured while making a delivery. McCants's claim form identifies OEDS as her employer. While OEDS's argument that anyone can file a claim—whether meritorious or not—is certainly true, the fact that McCants filed the claim and sought workers' compensation benefits under OEDS's policy with IWIF raises a dispute of fact with respect to the status of the messengers.

In addition to the affidavits, IWIF relied upon the sworn deposition testimony of McKenna. During his deposition, McKenna indicated the following facts that raise questions of material fact regarding the status of the messengers as OEDS employees versus independent contractors/sole proprietors: 1) OEDS conducts interviews, hires the messengers, and maintains messenger "personnel files"; 2) the messengers do not own their own companies and the vast majority of them work only for OEDS; 3) the messengers do not submit bills or invoices to OEDS, but rather OEDS keeps records of wages owed to messengers; 4) OEDS tells the messengers where to make deliveries and requires that they determine and take the quickest route in making the deliveries; 5) OEDS provides "paperwork" training to the messengers; 6) OEDS pays all the messengers the same rate; 7) some messengers are assigned to specific customers of OEDS; and 8) messengers must submit written requests to OEDS for sick time and vacation days.

Messengers are also issued identification cards with the name and address of "Orient Express Delivery Service, Inc." and must submit letters of resignation to McKenna at OEDS.

Additionally, a non-compete clause, in the independent contractor agreement with Orient Express, prohibits messengers, for one year following the termination of their "employment," from becoming "employed" by any other courier service or soliciting or otherwise competing for courier business.

The deposition testimony and affidavits produced by OEDS demonstrate that there are disputes of material fact. As such, we hold that the court erred in granting the motion for summary judgment.

**C. Courts must undertake an analysis of the factors set forth in Maryland case law to determine a worker's status, and cannot solely rely upon sole proprietor forms or independent contractor agreements executed by the parties.**

Although we have determined that the court erred in granting the motion, we think it is necessary to provide guidance to the court upon remand.

**1. Sole Proprietor Status Forms**

 OEDS emphatically argues that summary judgment was appropriate because each worker had executed a sole proprietor election form and an independent contractor agreement; and, therefore, the workers *are* sole proprietors or independent contractors. We disagree. This circular reasoning begs the question of whether the messengers are sole proprietors and/or independent contractors in the *first place.* We explain.

LE § 9–508 provides, in pertinent part:

(f)(1) A principal is not liable to pay compensation to an individual under this title *if the individual:*

\* \* \*

(iii) is a sole proprietor who:

1. does not notify the principal contractor, on a form approved by the Commission, of the individual's status as a covered employee; and

2.	does not elect to be a covered employee under § 9–227 of this title.

(2) An individual is presumed to be a sole proprietor who is not a covered employee under this section if:

(i) a substantial part of the individual's income is derived from the trade or business for which a principal contractor engages the individual and from which the individual has attempted to earn a taxable income; and

(ii) 1.	the individual notifies the principal contractor on a form approved by the Commission that the individual has not elected to become a covered employee under § 9–227 of this title; or

2.	the individual has filed the appropriate Internal Revenue Form 1040. . . .

(Emphasis added).

Subsection (f)(1) exempts a principal contractor, such as OEDS, from liability only if the individual is a sole proprietor and does not elect to be a covered employee. Although LE § 9–508(f) does provide that a principal contractor is not liable to pay compensation to sole proprietors, there is nothing in the statute that indicates that a worker can simply "elect" status as a sole proprietor and "opt out" of the workers' compensation system if the worker is not a sole proprietor in the first instance. The *reductio ad absurdum* of OEDS's interpretation of the statute is that any worker "employed" by any Maryland company could become a sole proprietor by virtue of signing a form, and thereby decline workers' compensation coverage.

██	The Act, however, is remedial in nature, and intends to protect workers and provide coverage, regardless of whether they believe they want coverage when first hired. *See Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 472, 784 A.2d 569 (2001) ("Act is remedial in nature") (citations omitted); *accord Para v. Richards Group of Wash. Ltd. P'ship*, 339 Md. 241, 251, 661 A.2d 737 (1995) (The Act "as a whole should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent

purposes.") (Citations omitted); *Weatherly v. Great Coastal Express Co., Inc.,* 164 Md.App. 354, 379–80, 883 A.2d 924 (2005) (purpose of the Act is to protect employees, employers, and public by maintaining a no-fault compensation system for employees) (citations omitted).

The sole proprietor status form can be considered as some evidence of sole proprietor status but is not dispositive. Whether an individual is a sole proprietor is a question depending on the specific circumstances of each case.

## 2. Independent Contractor Agreements

Independent contractors are not employees entitled to workers' compensation benefits under the Act. *See, e.g., Criminal Injuries Comp. Bd. v. Gould,* 273 Md. 486, 517, 331 A.2d 55 (1975) (the Act does not apply to independent contractors who contract to work for another party according to the contractors' own means and methods and are free of control related to the performance of work). As we stated in Section B, *supra,* the proper analytical framework that courts should employ in making this determination is otherwise well-settled:

This Court has traditionally considered five criteria in determining whether or not an employer/employee relationship exists between two parties. These criteria, developed from the common law standard for determining the master servant relationship, *see Sun Cab [Co. v. Powell,* 196 Md. 572, 577, 77 A.2d 783 (1951),] 77 A.2d at 784–85, include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. *Mackall v. Zayre Corp., supra,* 293 Md. [221] at 230, 443 A.2d [98] at 103 [(1982)].

Of the five factors, the factor of control stands out as the most important. We have said for example, that whether the employer "has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done" is the "decisive," *Mackall,*

*supra,* 293 Md. at 230, 443 A.2d at 103, or "controlling" test, *L. & S. Constr. [Co. v. State Accident Fund,* 221 Md. 51, 57, 155 A.2d 653 (1959)], 155 A.2d at 656.

*Whitehead, supra,* 304 Md. 67, 77–78, 497 A.2d 803. *Accord Auto. Trade Ass'n of Md. v. Harold Folk Enters., Inc.,* 301 Md. 642, 659, 484 A.2d 612 (1984); *Leonard v. Fantasy Imps., Inc.,* 66 Md.App. 404, 409, 504 A.2d 660 (1986).

 A worker is considered an independent contractor if he performs the work " 'according to his own means and methods free from control of his employer in all details connected with the performance of the work except as to its product or result.' " *L.M.T. Steel Prods., supra,* 47 Md.App. at 636, 425 A.2d 242 (quoting *Williams Constr. Co. v. Bohlen,* 189 Md. 576, 580, 56 A.2d 694 (1948)) (additional citation omitted). On the other hand, even if the employer has only "some ability, should he care to exercise it, to tell the 'employee' what to do and how and when to do it," a worker is considered an employee, rather than an independent contractor. *Id.* Additionally, the "parties' subjective belief as to whether an employment relationship exists is not dispositive of the legal question of whether one is the employer of another, except as such belief indicates an assumption of control by one and the submission to control by the other." *Whitehead, supra,* 304 Md. at 85, 497 A.2d 803 (citation and internal quotation marks omitted).

 Again, the bald assertion that a worker is an independent contractor by virtue of signing a form to that effect is not sufficient. We advise courts to avoid elevating form over substance in this respect, because whether workers are independent contractors or employees for workers' compensation purposes is a fact-specific inquiry that depends upon the circumstances of each case. Indeed, after careful consideration of the factors, a court could find that the emperor wears no clothes—that is, despite the belief and insistence of the parties, independent contractor status does not actually exist.

OEDS relies on the fact that the messengers have the ability to determine their own routes to bolster its argument

that they are independent contractors. This, however, is not enough for a court to conclude that a worker is an independent contractor and not an employee. More is required. Courts must examine the factors and determine the extent to which control is exercised over the workers. In doing so, courts must acknowledge that the general trend in Maryland has been to narrowly define "independent contractor" and to protect employee access to unemployment insurance, workers' compensation insurance, and other benefits.

For example, the Workplace Fraud Act, which became effective on October 1, 2009, makes it a violation to fail to properly classify workers as employees, and imposes penalties on those employers who knowingly misclassify their workers. LE § 9–402.1. Additionally, LE § 9–202(a) provides that an individual is *presumed* to be a covered employee for workers' compensation purposes "while under the service of an employer under an express or implied contract of apprenticeship or hire." (Emphasis added). And, "[t]o overcome the presumption of covered employment, an employer shall establish that the individual performing services is an independent contractor in accordance with the common law or is specifically exempted...." LE § 9–202(c).

Courts in other jurisdictions have seen fit to include in the analysis of the employer-employee relationship whether the worker must report to work at the courier's office, and whether the courier service assigns specific deliveries to specific workers, among other things.[7] *See, e.g., Estrada v. FedEx Ground Package Sys., Inc.,* 154 Cal.App.4th 1, 64 Cal.Rptr.3d 327, 336–37 (2007) (finding drivers to be employees where they worked full time, were paid weekly, had regular schedules and

---

7. Specifically, class action litigation has been initiated against Federal Express regarding the status of its driver as employees or independent contractors. *See generally In re FedEx Ground Package System, Inc. Employment Practices Litigation,* 662 F.Supp. 2d 1069, 1077 (N.D.Ind. 2009) (resolving motions for class certification orders in the following states: AL, AR, FL, IL, IN, IA, KS, KY, MD, MA, MI, MN, MS, MO, MT, NJ, NY, OR, PA, RI, SC, SD, TN, TX, VA, WV, and WI).

regular routes, received many standard employee benefits, wore uniforms, used company-specific scanners and forms, and were required to work exclusively for the company); *AFM Messenger Serv., Inc. v. Dep't of Employment Sec.*, 198 Ill.2d 380, 261 Ill.Dec. 302, 763 N.E.2d 272, 285 (2001) (employer-employee relationship existed between a courier service and drivers where the courier service procured the customers, set the delivery prices, provided the delivery tickets to the customers, made the delivery arrangements, billed the customers, set the commission rate, paid the drivers, and retained the right to terminate the relationship at any time); *Rozran v. Durkin*, 381 Ill. 97, 45 N.E.2d 180, 181 (1942) (employer-employee relationship existed between courier service and driver where driver reported to the courier service every morning, was obligated to deliver packages assigned by the dispatcher and to make pickups within certain time limits, but provided his own truck and was free to work for other companies); *Zelney v. Murphy*, 387 Ill. 492, 56 N.E.2d 754, 756 (1944) (employer-employee relationship existed between courier service and driver where drivers provided own motorcycles, paid own expenses, and reported for work at the courier service's office in the morning); *Koontz Aviation, Inc. v. Labor & Indus. Relations Comm'n*, 650 S.W.2d 331, 334–35 (Mo.App.1983) (employer-employee relationship existed between baggage delivery company and drivers where drivers' ability to deliver baggage wholly depended on company's contract with the airlines).

As Maryland case law makes clear, the ability, or lack thereof, to control the worker is the cornerstone of independent contractor status. The above cases are instructive insofar as they highlight possible considerations in applying the five factors reiterated by the *Whitehead* Court.

It is worth noting that OEDS failed to produce certificates of insurance or other proof that the persons it alleges are independent contractors and sole proprietors lawfully secured their own workers' compensation obligations, as required by

the Policy.[8] Even assuming that the workers are independent contractors and sole proprietors, Maryland law does not equate the signing of these agreements with proof of insurance, and insurance must still be obtained.

Finally, IWIF argues that even if the messengers do not meet the common law definition of "employee" and the statutory elements under LE § 9–508 (statutory employees), there is sufficient evidence to meet the statutory elements under LE § 9–236 (individuals performing service in the course of an employer's business). IWIF contends that, under section 9–236, an individual who performs a service for compensation in the course of an employer's business is a covered employee if he (1) does not maintain a separate business, (2) neither represents to the public that he provides the service nor provides the service, and (3) does not have a covered employee. IWIF is correct that McKenna admitted in deposition that the messengers are individuals who do not own their own courier companies and do not have their own employees or assistants. Further, the evidence shows that at least 90% of the messengers work only for OES/OEDS and not for other companies. There is no evidence that any of the messengers advertise their services to the general public.

For all of the foregoing reasons, we find the grant of summary judgment to be improper and remand for proceedings not inconsistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE IS REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

8. OEDS did produce a certificate of liability insurance for Contractor Management, Inc. ("CMI"), which is included in the record extract. However, it is Orient Express's status—not CMI's—that is at issue in this case.