**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1739

September Term, 2013

JAMES F. BLACKWELL

v.

CSX TRANSPORTATION, INC.

Kehoe,
Berger,
Nazarian,

JJ.*

Opinion by Berger, J.

Filed: October 29, 2014

* Meredith and Arthur, JJ., did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

This appeal arises out of an order of the Circuit Court for Baltimore City granting appellee, CSX Transportation, Inc. ("CSX"), summary judgment against appellant, James F. Blackwell ("Blackwell"). Blackwell contends that the circuit court improperly concluded that his current claim is barred by a release he executed with CSX in settlement of a prior claim arising under the Federal Employers' Liability Act ("FELA").

On appeal, Blackwell presents one issue[1] for our review, which we rephrase as follows:

> Whether the circuit court erred in granting CSX's motion for summary judgment.

For the reasons that follow, we affirm the judgment of the Circuit Court for Baltimore City.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.     The Prior Lawsuit**

In 2007, Blackwell sued CSX pursuant to Section 1 of the FELA, 45 U.S.C. § 51, which provides a statutory cause of action for railroad employees who suffer workplace injuries as the result of the negligence of the railroad. Blackwell's 2007 complaint alleged that he developed "repetitive stress disorders" to his "knees and surrounding body structures" while employed by CSX. His 2007 complaint attributed this injury to Blackwell's "repeated

---

[1] The issue, according to Blackwell, is:

> Did the Circuit Court err in granting the Appellee's Motion for Summary Judgment on the basis that the Appellant's claim was precluded by a previously executed settlement and release?

walking on improper ballast [rocks] along the railroad tracks," as well as other job-related activities that Blackwell performed during the course of his employment with CSX.

In 2009, Blackwell and CSX settled Blackwell's 2007 FELA claim. As part of the settlement agreement, Blackwell received an undisclosed settlement amount from CSX. As consideration for the payment he received, Blackwell executed a litigation release ("the 2009 Release") which provided that he "intend[ed] to release and forever discharge" CSX from any liability arising from claims that he was exposed to "repetitive stress and cumulative trauma [that] allegedly caused [him] to suffer knee injuries and other injuries, disorders, or diseases of the lower extremities." Additionally, the 2009 Release expressly provided that "a substantial portion of the consideration paid for" the settlement and release of Blackwell's claims "is for the possibility of . . . the development of any new or additional repetitive stress or cumulative trauma injury either presently existing or that may arise in the future to the lower extremities or other body parts."

Prior to executing the 2009 Release with CSX, Blackwell had an opportunity to consult with his attorney, P. Matthew Darby, Esquire. In signing the 2009 Release, Blackwell declared that he did so "upon the advice and consultation of his[] counsel, [Mr.] Darby," and that he had "adequate time to review" the 2009 Release. When executing the 2009 Release, Blackwell initialed each page indicating that he had reviewed and understood that page's contents. Mr. Darby also signed the 2009 Release, certifying that he had "explained to [Blackwell] the legal consequences of the execution and delivery" of the release.

2

## II. The Instant Lawsuit

In 2013, Blackwell filed another lawsuit against CSX pursuant to Section 1 of the FELA. Blackwell's 2013 complaint alleged that he "developed repetitive trauma related disorders, including injuries to his feet and surrounding body structures (bilateral plantar fasciitis), as a result of his job duties which would repeatedly require him to work and walk on uneven surfaces, including large mainline ballast."

CSX moved for summary judgment on the ground that the 2009 Release barred Blackwell's 2013 claim. In opposition to CSX's motion for summary judgment, Blackwell asserted that the 2009 Release was invalid under Section 5 of the FELA, 45 U.S.C. § 55, which voids any contract or other device used by a common carrier to exempt itself from liability under the FELA. Blackwell argued that under the "known claim" approach[2], the 2009 Release did not bar his 2013 claim because, at the time the 2009 Release was executed, he was unaware of any existing injuries to his feet. Blackwell also argued, in the alternative, that under the "known risk" approach[3], the 2009 Release did not bar his 2013 claim because, at the time the 2009 Release was executed, he was unaware of any *risk* of potential injury to his feet that could be attributed to his past occupational exposure to repetitive stress.

---

[2] The "known claim" approach was discussed by the Sixth Circuit in *Babbitt v. Norfolk & W. Ry. Co.*, 104 F.3d 89 (6th Cir. 1997).

[3] The "known risk" approach was addressed by the Third Circuit in *Wicker v. Consol. Rail Corp.*, 142 F.3d 690 (3d Cir. 1998).

The circuit court granted CSX's motion for summary judgment. The circuit court concluded that "the plain and unambiguous language of" the 2009 Release "clearly states that it covers, 'injury that may arise to the lower extremities[,'] which includes the feet." Therefore, the circuit court entered judgment in favor of CSX because Blackwell's 2013 claim for an injury to his feet was precluded by the 2009 Release he had executed with CSX. This timely appeal followed.

**DISCUSSION**

**I. Standard of Review**

The entry of summary judgment is governed by Maryland Rule 2-501, which provides:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md. Rule 2-501(f).

The Court of Appeals has explained the standard of review of a trial court's grant of a motion for summary judgment as follows:

> On review of an order granting summary judgment, our analysis "begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law." *D'Aoust v. Diamond*, 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall,* 416 Md. 533, 546, 7 A.3d 536, 544 (2010)); *O'Connor v. Balt. Cnty.*, 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004). If no genuine dispute of material fact exists, this Court determines "whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 571, 948 A.2d 11, 18 (2008) (citations omitted). Thus, "[t]he standard of review

4

of a trial court's grant of a motion for summary judgment on the law is de novo, that is, whether the trial court's legal conclusions were legally correct." *D'Aoust*, 424 Md. at 574, 36 A.3d at 955.

*Koste v. Town of Oxford*, 431 Md. 14, 24-25, 63 A.3d 582, 589 (2013).

We are "obliged to conduct an independent review of the record to determine if there is a dispute of material fact." *Injured Workers' Ins. Fund v. Orient Express Delivery Serv., Inc.*, 190 Md. App. 438, 450-51, 988 A.2d 1120, 1127 (2010) (citing *Wells Fargo Home Mortgage, Inc. v. Neal*, 398 Md. 705, 714, 922 A.2d 538 (2007)). "A material fact is one that will alter the outcome of the case, depending upon how the fact-finder resolves the dispute." *Id.* at 451 (citing *Berringer v. Steele*, 133 Md. App. 442, 470-71, 758 A.2d 574 (2000) (citations omitted)). "Mere general allegations of conclusory assertions will not suffice." *Id.* (citing *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 738, 625 A.2d 1005 (1993)).

## II.    Validity of Settlement Releases under Section 5 of the FELA

The FELA creates a cause of action for railroad employees injured on the job due to the negligence of their employers. The statute provides:

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (2012).

A railroad employee has the choice of bringing a FELA claim in either state or federal court. *See* 45 U.S.C. § 56 (2012). FELA actions brought in state court, although subject to state procedural rules, are governed by federal substantive law. *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348 (1985). The validity of a release in a FELA action is governed by federal rather than state law. *Maynard v. Durham & S. Ry. Co.*, 365 U.S. 160, 161, 81 S.Ct. 561, 562 (1961). The party who attacks a release under federal law bears the burden of establishing the invalidity of the purported release. *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298 (1948).

Blackwell contends that the 2009 Release is invalid under Section 5 of the FELA because it functions as a device intended to exempt CSX from any liability under the FELA. Section 5 of the FELA provides, in pertinent part, that:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void . . . .

45 U.S.C. § 55 (2012). In spite of the rather sweeping language of Section 5 of the FELA, the Supreme Court has recognized that, in certain circumstances, litigation releases are not voided by the statute. *See Callen*, *supra*, 332 U.S. at 630-31. In *Callen*, a railroad employee suffered a back injury in a work-related accident that was allegedly caused by the negligence of his employer. *Id.* at 626. Subsequently, as consideration for a $250 payment he received from the railroad, the employee executed "a general release of 'all claims and demands which I have or can or may have against the said Pennsylvania Railroad Co. for or by reason of

6

personal injuries sustained by [the employee].'" *Id.* After the release was executed, the employee of the railroad alleged that his back injury was more severe and permanent than either the employee or railroad had originally envisioned. *Callen v. Pennsylvania R.R. Co.*, 162 F.2d 832, 833 (3d Cir. 1947), *aff'd*, 332 U.S. 625, 68 S. Ct. 296 (1948). The railroad employee then attempted to sue his employer for damages relating to his original back injury. *Callen*, *supra*, 332 U.S. at 628. To avoid the release he had executed with his employer, the railroad employee in *Callen* "contended that []his release violate[d] Section 5 of" the FELA. *Id.* at 630. The Supreme Court rejected this argument, holding:

> It is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability and to that extent recognizing its possibility. Where controversies exist as to whether there is liability, and if so for how much, Congress has not said that parties may not settle their claims without litigation.

*Id.* at 631.

Turning to the case at hand, the 2009 Release, like the release signed in *Callen*, does not violate Section 5 of the FELA. In *Callen*, the plaintiff suffered a back injury due to a workplace accident and released his employer from all claims for injuries arising from that accident. *Id.* at 626. Although the *Callen* Court found that neither the plaintiff nor the defendant-railroad was aware of the true extent of the plaintiff's injury at the time the release was executed, the Court nevertheless concluded that the release was valid under Section 5 of the FELA. *Id.* at 627-31.

7

Similarly, in 2007, Blackwell claimed to have developed knee injuries caused by repetitive stress and cumulative trauma attributable to his having to walk on ballast maintained by CSX. Blackwell then executed the 2009 Release which released all of his claims against CSX arising from the exposure of his lower extremities to repetitive stress and cumulative trauma. Thereafter, in 2013, Blackwell realized that he had also developed bilateral plantar fasciitis in his feet as a result of that very same occupational exposure to repetitive stress and cumulative trauma from walking on uneven ballast.

Essentially, both Blackwell and the plaintiff in *Callen* tried to invalidate the releases they had previously executed after discovering that their injuries were more severe than they had initially estimated. Just as the *Callen* plaintiff's ignorance of the severity of his injury did not defeat the validity of his release, the 2009 Release precludes Blackwell's present claim notwithstanding his professed ignorance of the development of bilateral plantar fasciitis at the time he executed the 2009 Release.

## III. The *Wicker* "Known Risk" Test

The *Callen* Court made clear that a release that serves as "a means of compromising a claimed liability" is valid under Section 5 of the FELA. *Id.* at 631. The Court made a point of distinguishing "a full compromise enabling the parties to settle their dispute without litigation" from "a device which obstructs the right of the [FELA] plaintiff to secure the maximum recovery if he should elect judicial trial of his cause." *Boyd v. Grand Trunk W. R.R. Co.*, 338 U.S. 263, 266, 70 S.Ct. 26, 28 (1949) (per curiam). The former is valid under

8

Section 5 of the FELA while the latter is void. *Id.* Therefore, we analyze the 2009 Release executed by Blackwell to determine whether or not it functions as a full compromise of a claimed liability. While the Supreme Court has examined the scope of Section 5 of the FELA in other contexts,[4] it has not expressly addressed when a litigation release acts as a full compromise of a claimed liability. In the absence of any controlling federal authority from the Supreme Court, we turn to the approach developed by the Third Circuit in *Wicker v. Consolidated Rail Corp.*, *supra*, to determine whether a litigation release precludes all future claims.[5]

In *Wicker*, the Court addressed whether FELA actions filed by five former railroad employees for exposure to toxic chemicals were barred because the employees had previously executed general releases in settlement of FELA claims that were unrelated to the risk of exposure to toxic chemicals. *Wicker*, *supra*, 142 F.3d at 690-702. Three of the five former employees had previously settled FELA claims regarding work-related back injuries, while the other two employees settled FELA claims related to occupational exposure to asbestos. *Id.* at 692-4. While the language of the releases signed by each employee differed

---

[4] *See*, *e.g.*, *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 362, 72 S.Ct. 312, 314–15 (1952) (holding that "a release of rights under [the FELA] is void when the employee is induced to sign it by the deliberately false and material statements of the railroad's authorized representatives made to deceive the employee as to the contents of the release."); *Boyd*, *supra*, 338 U.S. at 265 (concluding that agreement limiting venue in which employee could bring FELA action violated 45 U.S.C. § 55).

[5] We note that there is also an absence of any persuasive authority from the Fourth Circuit on this issue.

9

slightly, each of the releases was worded as a general release that purported to release the defendant-railroad from *every* employment-related claim that the employees could potentially assert, both past and future.[6] *Id.* at 693-4. The Third Circuit concluded that it would be improper for the releases executed by the *Wicker* plaintiffs in settlement of FELA claims for asbestos exposure or back injury to preclude their future claims for unrelated injuries related to occupational exposure to toxic chemicals. *Id.* at 701-2. Therefore, after reviewing applicable Supreme Court precedent, most notably *Callen*, the Court held that:

> [A] release does not violate Section 5 provided it is executed for valid consideration as part of a settlement, and the scope of the release is limited to those risks which are known to the parties at the time the release is signed. Claims relating to unknown risks do not constitute "controversies," and may not be waived under Section 5 of [the] FELA. For this reason, a release that

---

[6] The release signed by Edward Wicker, in settlement of his FELA claim for asbestos exposure, provided, in part:

> I, Edward Wicker . . . hereby release and hereby discharge Consolidated Rail Corporation . . . from any and all losses, claims, liabilities, actions, causes of action . . . and demands of any kind whatsoever in nature . . . which I have or to which I claim to be entitled by reason of my injuries, known or unknown, foreseen or unforeseen . . . which now exist or which may arise in the future as a result of or in any way connected with my alleged exposure to any material, substance, product and/or good(s) of any kind or nature (including but not limited to dust, fumes, vapors, mists, gases, agents, asbestos or toxic substances of any kind) supplied or permitted to exist by [Conrail], and/or arising out of any working condition, of any kind, during my employment by [Conrail]. . . .

*Wicker*, *supra*, 142 F.3d at 693.

spells out the quantity, location and duration of potential risks to which the employee has been exposed—for example toxic exposure—allowing the employee to make a reasoned decision whether to release the employer from liability for future injuries of specifically known risks does not violate Section 5 of [the] FELA.

*Id.* at 701 (internal citation omitted).

In crafting this standard, the Third Circuit specifically avoided limiting the scope of settlement releases to those injuries in existence at the time the release was executed. *Id.* at 700-01. The Court noted that allowing for settlement and release of potential FELA claims that technically have not accrued at the time a release is executed would benefit both railroad employees and employers. *Id.* The Court further explained:

[I]t is entirely conceivable that both employee and employer could fully comprehend future risks and potential liabilities and, for different reasons, want an immediate and permanent settlement. The employer may desire to quantify and limit its future liabilities and the employee may desire an immediate settlement rather than waiting to see if injuries develop in the future. To put it another way, the parties may want to settle controversies about potential liability and damages related to known risks even if there is no present manifestation of injury.

*Id.* Therefore, according to the *Wicker* "known risk" test, a release is valid under Section 5 of the FELA if it is executed in settlement of a FELA claim *and* its scope is limited to risks known to both the employer and employee at the time the release is executed. In determining those risks "known" to both parties at the time a release is executed, courts look to the terms of the release as "strong . . . evidence of the parties' intent," particularly if the release "chronicles the scope and duration of the known risks" without "merely detail[ing] a laundry

11

list of diseases or hazards." *Id.* at 701. This approach allows employers to estimate, and potentially cap, their liability with respect to employee FELA claims while simultaneously preventing employees from unknowingly waiving future, unrelated FELA claims that may arise during the course of their employment.

We agree with and adopt the "known risk" test set forth by the Third Circuit in *Wicker*. We conclude that the "known risk" test is consistent with the language of Section 5 of the FELA considered in light of the Supreme Court's decision in *Callen*. Additionally, the rationale behind the "known risk" test realistically reflects the interests of employers and employees covered by the FELA in compromising claims. We disagree with Blackwell's contention that adopting the "known risk" test will result in increased litigation of FELA claims because plaintiffs will be hesitant to accept the "risk of unintentionally signing away rights to pursue future, unrelated injuries." Rather, adoption of the "known risk" test will merely enable employees with FELA claims to compromise and release those claims regarding future injuries that *are directly related* to risks presently known to both parties. In adopting the "known risk" test from *Wicker*, this Court aligns itself with a majority of state courts that have considered the issue.[7]

---

[7] *See, e.g., Jaqua v. Canadian Nat'l R.R., Inc.*, 274 Mich. App. 540, 555, 734 N.W.2d 228, 236-37 (2007) ("We agree that *Wicker* is consistent with § 5 as well as the Supreme Court's opinions in *Callen*, *Schubert*, and *Duncan*, without unnecessarily broadening or narrowing the scope of the rule. Accordingly . . . we adopt the reasoning in *Wicker* here."); *Illinois Cent. R.R. Co. v. Acuff*, 950 So.2d 947, 960 (Miss. 2006) ("[U]nder the specific language of Section 5 of the FELA and United States Supreme Court precedent, we find the
(continued...)

12

Applying the "known risk" test set forth by the Third Circuit in *Wicker*, the 2009 Release is valid under Section 5 of the FELA, and, therefore, bars Blackwell's 2013 claim against CSX. The 2009 Release was executed by Blackwell in settlement of his then extant FELA claim for repetitive stress and cumulative trauma injuries to his "knees and surrounding body structures." Moreover, the scope of the 2009 Release is expressly limited to releasing Blackwell's potential FELA claims against CSX for the risk of "any repetitive stress and/or cumulative trauma injury either presently existing or that may arise in the future to the lower extremities." Furthermore, the language of the release "chronicles the scope and duration of the known risks" which "suppl[ies] strong evidence in support of" the validity of the release. *See Id.* at 701.[8]

---

[7] (...continued)
Third Circuit's approach allowing the release of future claims based on specific risks known to the parties to be appropriate."); *Sinclair v. Burlington N. & Santa Fe Ry. Co.*, 347 Mont. 395, 413, 200 P.3d 46, 59 (2008) ("We join these courts in adopting the standard set forth in *Wicker* to determine the validity and scope of a FELA release in light of § 5 of that act."); *Oliverio v. Consol. Rail Corp.*, 14 Misc. 3d 219, 222, 822 N.Y.S.2d 699, 702 (N.Y. Sup. Ct. 2006) ("[T]he *Wicker* approach is the better approach. . . . This approach provides a realistic view of compromises and releases, while staying true to the prohibition on blanket relinquishments of rights under FELA.").

[8] The 2009 Release, lists the scope of the risk to which Blackwell was exposed as follows:

> The claims in the identified action allege that [Blackwell] was exposed to excessive and harmful repetitive motion and stress, exposure to force, awkward postures, lateral motion, vertical motion, horizontal motion, whole body vibration, temperature extremes, strain, vibration of any type or intensity, and cumulative trauma ("repetitive stress and cumulative trauma") due to the equipment and methods with which he/she performed

(continued...)

13

In *Wicker*, the Third Circuit concluded that the releases signed by the plaintiffs were invalid under Section 5 of the FELA for two main reasons. *Id.* First, the Third Circuit concluded that the *Wicker* plaintiffs were unaware of the scope of the claims they were waiving when they executed their releases. *Id.* Second, the language of the releases was so generic that the employees could not have known of the actual risks to which they were exposed and from which they were releasing their employer. *Id.*

Neither of the deficiencies identified in the *Wicker* releases applies to the 2009 Release executed by Blackwell. The record here demonstrates that Blackwell understood that he was releasing CSX from all FELA claims he may have, either present or future, related to his occupational exposure to repetitive stress and cumulative trauma from walking on uneven ballast. Moreover, Blackwell was required to initial each page of the 2009 Release to indicate that he had read and understood the contents of each page. Additionally, Blackwell was represented by counsel when he voluntarily elected to execute the 2009 Release.

Although the *Wicker* plaintiffs were also represented by counsel when they executed their releases, the Third Circuit held that the releases at issue demonstrated that the plaintiffs did not understand the scope of the claims being waived. *Id.* In contrast, in the instant case,

---

[8] (...continued)
his/her work for [CSX], and that said repetitive stress and cumulative trauma allegedly caused [Blackwell] to suffer knee injuries and other injuries, disorders, or diseases of the lower extremities.

14

Blackwell's counsel signed the 2009 Release certifying that he "explained to [Blackwell] the legal consequences of the execution and delivery" of the 2009 Release and that Blackwell "appeared to have full knowledge" of its contents.

Critically, the language of the 2009 Release clearly indicates that both Blackwell and CSX understood that the purpose of the agreement was to foreclose any present or future claims that Blackwell might have against CSX as a result of Blackwell's occupational exposure to repetitive stress and cumulative trauma on his lower extremities. Blackwell contends that the 2009 Release does not explicitly mention injuries to his "feet" or the specific risk of developing "bilateral plantar fasciitis." Blackwell, therefore, maintains that the 2009 Release does not bar his 2013 claim. We hold that the 2009 Release encompasses Blackwell's 2013 claim because it provides that "a substantial portion of the consideration paid for [the 2009 Release] . . . is for the possibility of . . . the development of any new or additional repetitive stress or cumulative trauma injury either presently existing or that may arise in the future to the lower extremities or other body parts."[9] Blackwell's 2013 claim for

_____

[9] In his affidavit, Blackwell contends that the 2009 Release "did not include any alleged injuries to [his] feet" and "did not include the alleged injury of bilateral plantar fasciitis." At the hearing on CSX's motion for summary judgment, however, Blackwell did not dispute that his feet are part of his "lower extremities." Furthermore, Blackwell's 2013 complaint alleges that Blackwell "developed repetitive trauma related disorders, including injuries to his feet and surrounding body structures (bilateral plantar fasciitis)," thereby acknowledging that bilateral plantar fasciitis is a repetitive trauma related disorder. In light of the above-quoted language from the 2009 Release, Blackwell has failed to present a genuine dispute of material fact concerning the scope of claims precluded by the 2009 Release.

bilateral plantar fasciitis is, therefore, precluded by the 2009 Release because bilateral plantar fasciitis is a repetitive stress or cumulative trauma disorder of the lower extremities.[10] Indeed, this is the very language relied upon by the trial court judge in granting CSX's motion for summary judgment. Furthermore, the 2009 Release provides that Blackwell "acknowledges that he/she knows and understands the potential risks of any and all future injuries associated with the alleged exposure identified herein, and that the risks and possible future effects of [Blackwell's] injuries are specifically bargained for, included, and released."

## IV.    Inapplicability of the "Known Claim" Test from *Babbitt*

Blackwell contends that this Court should apply the "known claim" test[11] in analyzing the validity of the 2009 Release under Section 5 of the FELA. In so doing, he alleges that the "known claim" test is more in line with the legislative intent to benefit employees under the FELA. *See Kernan v. American Dredging Co.*, 355 U.S. 426, 432, 78 S. Ct. 394, 398 (1958) (explaining that "it is clear that the congressional intent [in passing the FELA] was to provide liberal recovery for injured workers"). *Babbitt*, however, addresses a very different factual scenario than that presented in the instant case and is otherwise inapplicable.

*Babbitt* involved a group of railroad employees who executed general releases with their employer when they voluntarily separated from the company. *Babbitt*, *supra*, 104 F.3d

---

[10] We need not address whether the 2009 Release would bar a claim for injury to other body parts unrelated to Blackwell's "lower extremities."

[11] The "known claim" test was fashioned by the Sixth Circuit in *Babbitt v. Norfolk & Western Railway Co.*, *supra*, 104 F.3d 89 (6th Cir. 1997).

16

at 90. Subsequently, these employees filed suit against their former employer for hearing loss on the grounds that they were negligently exposed to excessive noise levels during the course of their employment with the railroad. *Id.* The defendant-railroad in *Babbitt* argued that the employees' claims were precluded by the releases they had signed upon ending their employment. *Id.* at 90-1. The employees countered by claiming that the releases they executed were void under Section 5 of the FELA. *Id.* After analyzing relevant Supreme Court precedent, the Sixth Circuit concluded that:

> [W]here there exists a dispute between an employer and employee with respect to a FELA claim, the parties may release their specific claims as part of an out-of-court settlement without contravening the Act. *However, where the release was not executed as part of a specific settlement of FELA claims, 45 U.S.C. § 55 precludes the employer from claiming the release as a bar to liability*. . . . To be valid, a release must reflect a bargained-for settlement of a known claim for a specific injury, as contrasted with an attempt to extinguish potential future claims the employee might have arising from injuries known or unknown by him.

*Id.* at 93 (emphasis added) (internal citation omitted). Thereafter, the *Babbitt* court remanded the case to the district court to determine whether the releases executed by the plaintiffs in the case were "part of a settlement for damages sustained for the [p]laintiffs' specific injuries." *Id.*

Blackwell mistakenly contends that *Babbitt* holds that litigation releases are valid under Section 5 of the FELA *only* if their scope is limited to known claims for specific injuries that are in existence when the release is executed. This characterization of the

17

*Babbitt* holding ignores the unique position of the *Babbitt* plaintiffs. The plaintiffs in both *Callen* and *Wicker* sought to invalidate releases they had executed with their employers as part of a settlement of FELA claims. Specifically, the *Callen* plaintiff executed his release in settlement of a FELA claim for a work-related back injury. *Callen*, 332 U.S. at 626-28. Similarly, the *Wicker* plaintiffs each executed their releases in settlement of specific FELA claims for either work-related back injuries or occupational exposure to asbestos.[12] *Wicker*, *supra*, 142 F.3d at 692-94. In contrast, at the time the *Babbitt* plaintiffs executed their releases, they were not negotiating the settlement of *any* FELA claim. Rather, the *Babbitt* plaintiffs executed their releases as part of their agreement to voluntarily terminate their employment with the defendant-railroad. *Babbitt*, *supra*, 104 F.3d at 90. Critically, at the time they executed their releases, the *Babbitt* plaintiffs were not engaged in "controversies . . . as to whether there [was] liability" on the part of their employer. *Callen*, *supra*, 332 U.S. at 631.

Rather than limiting the permissible scope of litigation releases under Section 5 of the FELA, the holding in *Babbitt* serves to invalidate releases that attempt to confer general

---

[12] It is important to note that the *Wicker* plaintiffs executed their releases as part of the settlement of their back injury or asbestos exposure FELA claims. The language of those releases, however, was very broad and purported to release the defendant-railroad from FELA claims *unrelated* to the employees' back injuries or asbestos exposure (i.e., FELA claims for injuries related to occupational exposure to toxic chemicals). For this reason, the *Wicker* court concluded that the releases at issue in that case were invalid under Section 5 of the FELA because the releases attempted to waive the plaintiffs' potential FELA claims unrelated to their existing back injuries or asbestos exposure. *Wicker*, *supra*, 142 F.3d at 700-01.

immunity on an employer as opposed to addressing a specific instance of disputed liability. *Babbitt*, *supra*, 104 F.3d at 93. When the *Babbitt* plaintiffs executed their releases with their employer, neither they, nor their employer, were aware of any potential FELA claims that the employees may have had or would have in the future as a result of their employment. Instead, the releases in *Babbitt* were intended to allow the employer to limit its liability for FELA claims to currently-employed workers only. Therefore, *Babbitt* is of little relevance to the question in this case, namely, whether the 2009 Release, executed in settlement of a then-existing FELA claim, bars Blackwell from later pursuing the same claim against CSX.

For the foregoing reasons, we adopt the Third Circuit's "known risk" test and hold that the 2009 Release bars Blackwell's 2013 claim against CSX for bilateral plantar fasciitis developed as a result of occupational exposure to repetitive stress and cumulative trauma. Accordingly, the trial court did not err in granting CSX's motion for summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**